In re Estate of Cline.

[Cite as In re Estate of Cline, 1 Ohio Misc. 28.]

(No. 622033—Decided December 7, 1964.)

In Probate Court of Cuyahoga County.

*Messrs. Dudnik, Komito, Nurenberg, Plevin, Dempsey & Jacobson*, By *Mr. Marshall Nurenberg*, for Anne D. Cline, applicant.

*Mr. D. G. Dottore* and *Mr. Austin T. Klein*, for Charles E. Cline, applicant.

DECATUR, REFEREE. The instant controversy comes before the Probate Court of Cuyahoga County upon opposing applications of Anne D. Cline, as the surviving mother of Carol Elaine Cline, deceased, and Charles E. Cline, surviving father of decedent, pursuant to the provisions of Section 2125.03, Revised Code, for an order of this Court to apportion distributive shares in a wrongful death judgment in the sum of $30,000.00, recovered by Anne D. Cline, as Administratrix of decedent's estate, which judgment was rendered by the Common Pleas Court for Erie County upon verdict of a jury. It has been represented to this court that the judgment fund of $30,000.00 has been paid by the alleged tortfeasor and is presently in the custody of counsel for the Administratrix awaiting order of this court as to distribution. It has been stipulated by the opposing claimants that their respective applications to this court for distributive shares may be treated as having been filed simultaneously. It has further been stipulated by the claimants that this court shall render its order of distribution without regard to the evidence adduced in the trial in Erie County, and without regard to the pleadings in the Court, or the recitations of beneficiaries in the trial, wherein the judgment fund was recovered.

Section 2125.03, Revised Code, provides the guidelines for applications, such as presently before this Court, and in its pertinent portion provides as follows:

"The court making the appointment shall adjust such share in such manner as is equitable, having due regard to the pecuniary injury to each beneficiary resulting from such death and to the age and condition of such beneficiaries. In making such distribution, the court may also consider funeral expenses and other items of expense incurred by reason of the death."

There is a dearth of authority in Ohio directly construing the foregoing statute. However, it is quite apparent from its language that the statute was intended to vest discretion in this court in apportioning distribution in accordance with established principles of equity, without regard to the statute of descent and distribution, and without regard for any precise mathematical formulae. This court, of course, recognizes that as in all matters of judicial discretion such discretion cannot be abused, but should be supported by evidence. It is further to be noted that apart from the matter of funeral expenses and other expense, the principal standards to be considered by the court are the pecuniary injury, if any, suffered by the applicants and their age and condition. To crystalize the discretion of the court under the present statute, it is well to remember that originally the Ohio statute, Swan's Revised Statute, 707, 708, passed March 25, 1851, required, under Section 2, distribution to the widow and next of kin in the proportions provided by law in relation to the distribution of personal estate left by persons dying intestate. The present statute clearly recognizes the inequities of such distribution. Beneficiaries are those classes of persons designated by Section 2125.02, Revised Code.

Testifying in her own behalf, Anne D. Cline stated her birth date to be February 15, 1913. She and Charles Cline were married on November 25, 1932. Two children were born of that marriage, their son, James Cline, presently living, born July 18, 1936, and the decedent, Carol Elaine Cline, born October 12, 1937, who came to her death by accidental means on February 2, 1962, which accident gave rise to the instant action for wrongful death and creation of the aforementioned judgment fund. It was further established, by the testimony of Anne D. Cline and documentary evidence to this court, that she and Charles Cline became separated on November 26, 1957. At all times pertinent, the decedent, Carol Elaine Cline, lived with her mother at the single family residence at 3491 West 47th Street.

It was established without controversy that after the separation, Charles Cline did not contribute to the support of either his wife, Anne Cline, or his children, although both of the children were minors at the time. It was further established without controversy that at the time of the separation, Charles Cline was gainfully employed in the postal service of the United States, and likewise, was so employed up to and at the time of the accident of February 2, 1962.

In support of a contention that Anne D. Cline sustained a direct pecuniary loss by reason of Carol's death, she presented an itemized budget on the cost of living at the household between herself and her daughter, identified in the record as Exhibit "B." This exhibit established that the standard of living at the household involved expenditures of $4,620.00, of which Anne's net earings amounted to $2,800.00, and the deficit of $1,-820.00 was contributed mostly by Carol out of her earnings with an establishment known as Manning Studios. Cross-examination developed that Carol was receiving some of the benefits of these expenditures, but nevertheless, the evidence established uncontrovertedly that Carol Elaine Cline was making substantial pecuniary contributions to the direct support of her mother. Indeed both James Cline, the son, and Charles Cline testified that they were aware of direct pecuniary contributions made by Carol toward the support of Anne D. Cline. In fact, prior to Carol's death, Anne D. Cline had quit her own job at Cleveland Metropolitan General Hospital, this being in November, 1961, and by pre-arrangement with Carol, Anne was to remain at home, and Carol would be the sole wage earner, at least during the year 1962, and claim Anne as a dependent. Carol also purchased a sofa and other items of value for the household furnishings, and performed other services of value to her mother, such as helping her shop, select gifts, take care of the garden, etc. Anne testified that she did eventually, after the death, go back to work, this time for the Zayres Department Store, having commenced work about September 10, 1962, for the sum of $54.00 per week, but that she resigned from this position by reason of the present condition of her health, and at present, is dependent upon her aged father, Mr. James Lekan, who is 79 years of age, for support. The evidence further established without controversy that Carol carried certain poli-

cies of insurance during her lifetime, in which her mother was named as the beneficiary, and that these insurance proceeds were ultimately used by Anne D. Cline, along with personal savings of Anne D. Cline, to pay the entire funeral bill, estimated at approximately $2,000.00.

Charles Cline admitted that he had not received any pecuniary support from his daughter, nor for that matter, does he presently receive any from his son. On the contrary, Charles Cline contended that from time to time, his son, James, has made pecuniary demand upon him, and that he has been able to respond by helping out his son. There was specific testimony that Charles Cline made advances for his son's benefit in putting in a new asphalt driveway. Charles Cline admitted that he had been told by his son, James, about the funeral expenses, and asked to make a contribution thereto, but he had declined to do so, because he had never been presented with a copy of the funeral bill. James Cline, their son, testified that he did ask his father to make a contribution of 50% of the cost of the funeral expenses, or a contribution in the sum of $1,000.00, and that when his father said "Send me the bill," he did not broach the subject again. In any event, the evidence clearly establishes that all of the funeral expenses of $2,000.00 were paid by Anne D. Cline.

Without further detailing the facts bearing upon pecuniary loss, the evidence establishes without controversy that the only direct pecuniary injury in this case was suffered by Anne D. Cline. This was corroborated by the applicant, Charles Cline, and their son, James Cline, who was the only disinterested witness in the case. It is likewise clear that all expenses concerned with the death of Carol Elaine Cline have thus far been paid without reimbursement by Anne D. Cline, using either her own money, or funds to which she was entitled out of insurance proceeds arising out of the death of their daughter, in which Anne D. Cline was named as the sole beneficiary.

Indeed, Charles E. Cline does not bottom his application upon a claim of direct pecuniary loss. Rather, he contends that he was forced to resign from his position of employment with the postal service, and has since barely made a living as proprietor of a small gift card shop because of the effects of an accident in which he was involved, causing him back dis-

ability. He, therefore, contends that he is entitled to participation in the aforementioned judgment proceeds under that portion of the statute which entitles condition of the beneficiary to be taken into consideration by the Court. Stated differently, Charles Cline attempted to adduce evidence to support a claim of loss of pecuniary expectancy should he in the future be unable to support himself by reason of ill health. In this connection, it should also be kept in mind that Anne D. Cline also makes a claim that she is no longer able to work, and is in a poor condition of physical and mental health, thereby necessitating these judgment proceeds for her support.

In support of the contention of Charles E. Cline that he now has an impaired physical condition which this Court should consider, he presented several exhibits to the Court. These have been carefully examined. These include a report of injury marked as Charles Cline, Exhibit 5, which established that on December 24, 1958, a privately owned vehicle crossed over the white line and caused a head-on collision with a government owned vehicle then being operated by Mr. Cline. The injuries are described as bruised left arm, back and neck. Thereafter, although he was entitled to such treatment as would be necessary for these injuries from official government medical services, Mr. Cline had two out-patient treatments, one on the day of the accident, December 24, 1958, and a second on December 29, 1958. These are documented by Charles Cline, Exhibit 3. These medical records establish that all X-rays were negative. The conclusion of the physician with regard to the spine is as follows:

"Back has normal range of motion and no spasm. Advised hot compresses to forearm. Avoid heavy lifting for one week, otherwise fit for duty."

Charles Cline also presented his own injury report, submitted on a form to be signed by the employee under the provisions of the Federal Employees' Compensation Act. This form describes injury to the left arm, states that back and neck were bruised, and that there is numbness in the left arm from elbow to hand. This form is part of the record in the instant hearing as Charles Cline, Exhibit 4. Charles Cline conceded that the only lost time that he had was covered by sick leave time with the post office, and he presented Charles Cline Exhibit 2 to sub-

34

stantiate his lost time. It shows that he returned to work on January 26, 1959. In further support of his medical condition, Charles Cline presented Exhibit 6, a copy of a medical report by William H. Mast, M. D. Dr. Mast, in his medical report, recommended that Charles Cline return at his earliest convenience, and if not improved, that he be referred to a neurologist for consultation. Mr. Cline testified that he only saw Dr. Mast on three occasions, and admitted that he never followed up with any neurologist. The evidence further disclosed that Charles Cline did make a third-party claim against the driver of the automobile which crossed over the center line, through an insurance company, represented by his attorney, D. G. Dottore, and that he entered into a complete release for a total sum of $1,400.00 in the year 1959. Charles Cline further testified that in the year 1960 he did not take any sick time, and in 1961 his sick time was only fifteen days. Mr. Cline claims that he resigned from his job with the post office in May, 1963, and then went into his present occupation as proprietor of his own gift shop in June, 1963, where he states he has been earning approximately $1,200.00 per year. He states that in 1964 he has been averaging $53.00 per month. Charles Cline admitted that upon his resignation he has never asked for the reopening of any claim for employee's compensation with the United States Department of Labor, although he knows he has such a right, and he has never sought any form of disabilty compensation or pension by reason of any alleged ill effects from the accident. He further admits that since his last visit with Dr. Mast in 1959, he has not sought any professional medical care for the alleged effects of the injury.

Upon review of the testimony, it is, therefore, the opinion of this Court that the claim of Charles E. Cline that he suffers from a physical condition which would entitle him to participate in the aforementioned judgment recovery is insufficient to overcome the compelling proof of pecuniary loss and need for support by Anne D. Cline. See 16 American Jurisprudence 227, Sec. 336, proof necessary relative to pecuniary loss of parents of adult child wrongfully killed.

Before concluding this opinion, this Court believes that some analysis of certain fundamental principles should be considered. As already noted, the only evidence of direct pecuniary

loss, that is, loss of direct support by the decedent was established by the claimant, Anne D. Cline, as the surviving mother with whom decedent resided. It is well recognized, however, that prospective advantages of a pecuniary nature which have been cut off by the premature death of the person from whom they would have proceeded should be considered. See *Karr* v. *Sixt*, 146 Ohio St. 527, 67 N. E. 2d 331 (1946). With regard to a deceased child, one of the important considerations is the disposition of the deceased to support the beneficiary-claimant. See 16 Ohio Jurisprudence 2d 497, et seq., especially Sections 145, 146. See also 16 American Jurisprudence 227, Sections 336 and 228, Section 337, in which it is stated that a court may consider the disposition of the deceased child to aid his parents. By these well established legal standards, the evidence established uncontrovertedly that the only disposition of Carol Elaine Cline was to support her mother, who needed it because she was not receiving support from her husband. The fact that all of the life insurance policies named the mother, Anne D. Cline, as beneficiary, and the fact that direct financial assistance was being given to Anne D. Cline seems conclusive to this court on this point.

It is also evidence from well established legal principles that where an adult child is deceased there is no presumption of pecuniary injury or loss. This is to be distinguished from the death of a minor child, where a presumption of pecuniary injury ordinarily exists in favor of those persons legally entitled to services, earnings, or support, customarily meaning the parents of a minor child. This presumption obtains for the benefit of such persons to entitle a court to find pecuniary loss on the presumption that the legal obligations of support would have been fulfilled. See *Karr* v. *Sixt, supra*. However, as established by 41 Ohio Jurisprudence 2d 334, Section 24, a parent's right to earnings and services extends only to a minor child. See Section 2111.08, Revised Code. While it is true that there is a criminal statute providing for the prosecution of an adult child possessed of or able to earn means sufficient to provide necessities for a parent, destitute and unable to earn subsistence, who refuses to supply such necessaries to such destitute parent, there is no civil liability for failure to support a destitute parent. See 41 Ohio Jurisprudence 2d 359, 360, Sections

44 and 45. See also *Gardner* v. *Hines,* 46 Ohio Law Abs. 241, 68 N. E. 2d 397 (C.P. 1946).

It is thus clear that at the time of her death, Carol Elaine Cline, as an adult child, did not stand in any relationship to the claimant which would give rise to any presumption of pecuniary loss or pecuniary injury, as that term is understood by law. Therefore, any claimant seeking to participate in the distribution of the wrongful death proceeds, must make some showing by evidentiary means of actual pecuniary loss. Anne D. Cline has made such a showing. Charles Cline has not.

One final consideration we believe is worthy of note. As hereinbefore stated, the total judgment proceeds are in the sum of $30,000.00. This court, by prior entry, has already allowed attorney fees to successful counsel for the administratrix in recovering the judgment fund in a fee of $10,000.00. This court has likewise authorized reimbursement from the judgment fund for expenses incurred in obtaining said judgment in the sum of $705.66. Of the remaining $19,294.34, the evidence establishes that $2,000.00 were expended by Anne D. Cline for funeral and related expenses to which, under the provisions of Section 2125.03, Revised Code, this court finds she is entitled to reimbursement. The instant controversy, therefore, stems from the opposing applications to this court for apportionment of the remaining $17,294.34. Anne D. Cline is presently 53 years of age. According to the United States Life Tables, as contained in the 1964 Supplement to Page's Ohio Revised Code, her present life expectancy is 23.93 years or approximately 24 years. If the remaining balance is, therefore allocated to Mrs. Anne D. Cline, she will receive the equivalent of slightly more than $700.00 per year over her remaining life expectancy. If consideration be given of the fact that such apportionment gives her the money in the hand now, as opposed to payments of approximately $700.00 per year over her 24 year remaining life expectancy, it is still evidence that such an apportionment by this Court falls short of making her whole in the light of the direct pecuniary loss that she has suffered by the death of her daughter. The evidence clearly established that the value of her daughter's contribution to her was far in excess of such sum. Furthermore, Anne D. Cline has already had a pecuniary

loss from the date of her daughter's death in February, 1962, until the present, which is a period of almost three years.

Upon, therefore, giving a careful weighing of all of the conflicting evidence, and the claims of the respective parties, witnesses and exhibits, this court finds that the application of Anne D. Cline, that the proceeds of said judgment be awarded to her, after due allowance for expenses and attorney fees, is well taken and should be granted. This Court further finds that the applicant, Charles E. Cline, has failed to produce proof of pecuniary loss or conditions of age and ill health sufficient to entitle him to participate in said judgment proceeds, and, therefore, his application to so participate is denied. It is the considered opinion of this Court, upon careful review of all of the sworn testimony of Anne D. Cline, Charles E. Cline, and their son, James Cline, together with careful consideration of all of the various exhibits which this Court has received and studied for consideration, that under principles of equitable distribution, it is only fair and just that the judgment proceeds in this case be awarded to the applicant, Anne D. Cline, as surviving mother.

*Application of Anne D. Cline granted.*
*Application of Charles E. Cline denied.*