## In re ESTATE OF MARINELLI.

[Cite as *In re Estate of Marinelli* (1994), 99 Ohio App.3d 372.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 94–T–5030.

Decided Dec. 19, 1994.

*Kenneth H. Inskeep,* for appellant Phillip Marinelli, Sr.

*Lou A. D'Apolito,* for appellee Judy Chavez.

*Mark S. Finamore,* for appellee Donald Marinelli.

*Turner, May & Shepherd* and *Stephen T. Britt,* for appellee Matthew Chavez.

*Phillip Marinelli, Jr., pro se.*

NADER, Judge.

This accelerated appeal is from the Probate Division of the Trumbull County Court of Common Pleas and is submitted to this court upon the record and briefs of the parties.

Appellant, Phillip Marinelli, Sr., appeals the judgment excluding him from the distribution of wrongful death settlement proceeds arising out of the death of his biological son, David A. Marinelli.

David A. Marinelli died in an automobile accident on August 22, 1990. A wrongful death action was commenced by the decedent's mother, Judith Chavez, in her capacity as administrator. Appellant was not a party to the lawsuit. A settlement was subsequently reached by the parties to the wrongful death action.

On September 20, 1993, the administrator filed Probate Form 14.0, "Application to Approve Wrongful Death Settlement or Distribution." Also on this date, notice was sent by the court to appellant's counsel that the application had been filed and that a hearing on the application was set for October 4, 1993. The hearing was conducted by a referee and concluded on October 6, 1993. Appellant made an appearance and testified. Other witnesses at the hearing were Judith Chavez and appellant's two surviving sons, Donald and Phillip, Jr. Appellant proposed at the hearing that $70,000 of the settlement proceeds be distributed to him and that $44,999 be distributed to Judith Chavez. The application of the administrator proposed the following distribution: $50,000 to Judith Chavez, $27,500 to Phillip Marinelli, Jr., $27,500 to Donald Marinelli, and $9,999 to Matthew Chavez (half-brother of deceased).

The referee issued a report and recommendation on October 19, 1993. The following are the referee's findings of fact, pertinent conclusions of law, and recommendation:

*"Findings of Facts*

"1. Phillip Marinelli, Sr. and Judy Chavez were married in 1968 and had three sons, Phillip Jr., David, and Donald who all were close in age.

"2. In 1984 Phillip and Judy divorced. Judy was given custody of the three minor boys and Phillip was ordered to pay support.

"3. In 1985 Judy went to court to enforce the support order and Phillip transferred his half interest in the marital home [$5,200 in equity] to satisfy arrearages. At that time, Phillip was not employed and had health problems. The Court suspended his obligation to pay support for his three minor children, and Judy supported the children from that time forward.

"4.  Phillip Marinelli, Sr. never paid any support from 1985 to the present for the deceased child, David, or for his other two children.

"5.  Phillip Marinelli, Sr. has never qualified for disability benefits. He lived with his mother, maintained an automobile, and periodically collected welfare. He gave David ten to twenty-five dollars on his birthday and at Christmas.

"6.  Judy remarried and had a child, Matthew. She and Mr. Chavez raised the four boys without any assistance from Mr. Marinelli.

"7.  Testimony at the hearing showed that Phillip Marinelli never initiated contact with any of his sons from 1984 until David's death and into the present. They only saw him because they were fond of his mother and went to visit her. Phillip, Jr. testified that the Grandmother [*sic*] would call the bar to fetch her son to see his sons.

"8.  The decedent was ranked in the top ten among high school wrestlers statewide. Mrs. Chavez testified she attended all of David's matches over his high school career and never saw David's father there. Mr. Marinelli states he went to a few matches but never went up to David afterwards. He kept all of his newspaper clippings.

"9.  The decedent was a talented artist and won awards. Mr. Marinelli had no knowledge of his talent. Mr. Marinelli never attended a school function during David's high school career.

"10.  Mr. Marinelli admits that his former wife never obstructed his ability to see his sons. She informed him of upcoming events and encouraged the relationship with his mother.

"11.  In the summer of David's death, when asked what contact they had, Mr. Marinelli replied that he had run into him at Truck World or Dairy Queen a couple of times.

"12.  Mr. Marinelli claims his oldest son Phillip is angry with him because he did not tell his sons his mother was in the hospital. This incident occurred after David's death but is significant to show the level of contact, caring, and solace shown. Mrs. Chavez stated it was tradition that the boys went to their grandmother's house on Christmas Eve. When they arrived, no one was home. Finally, a relative came and informed the boys that their grandmother had been in the hospital in intensive care for several days. Their father was aware of this and failed to tell them. Their grandmother died soon afterwards, and Mr. Marinelli did not notify them right away despite their concern.

"13.  Both Donald and Phillip, Jr. testified that their family with Mr. Chavez was very close, and that all three sons relied exclusively on their mother for counsel, guidance, and strength. They had little or no contact with their father

except inadvertently when visiting their grandmother. He never called or offered support.

"14. Mrs. Chavez related warm loving stories of her time with David. She stated that she understood she was entitled to a larger distributive share of the wrongful death proceeds, but she wanted David's brothers to have 'the lion's share.' She was not bitter about Mr. Marinelli's claim, but felt that he was never a part of his son's life in any way. David's brothers were there for him and grieved his loss. She stated she and Mr. Chavez had to work to support the boys when their father provided none.

"15. Donald Marinelli, who is 17, testified that David never saw their father. When asked how David felt about their father, Donald answered, 'David didn't feel anything about him at all.' Donald further testified that his father never told him he loved him.

"*CONCLUSIONS OF LAW*

" * * *

"4. David's natural parents are rebuttably presumed to have suffered damages by reason of the wrongful death. R.C. 2125.02(A).

"5. Clear and convincing evidence was presented that Mr. Marinelli had failed to maintain any semblance of a father-son relationship with David after David's parents divorced in 1984, although he was encouraged to do so by David's mother.

"6. Clear and convincing evidence was presented at trial based on the testimony and demeanor of the witnesses that Mr. Marinelli sustained no compensatory damages as a result of David's death.

"7. The evidence clearly and convincingly rebutted an [*sic* ] presumption that Mr. Marinelli has sustained any damage by reason of David's death.

"8. Mr. Marinelli failed to support David either financially or emotionally. Nor did he draw on David's affections for love, solace, services, society, companionship and comfort for a period at least from 1984 to the time of David's death. He testified that he never initiated contact with any of his sons. He saw them by chance when they stopped by to see his mother. He effectively abandoned his sons in 1984. He suffers no compensable loss for David's death.

"9. Based on the testimony and demeanor of the witnesses the Referee finds that the proposed distribution of the fiduciary is a reasonable distribution and is recommended for approval.

"Recommendation: Approve distribution of the fiduciary which excludes recovery by Phillip Marinelli, Sr. Clear and convincing evidence was presented which overcomes the rebuttable presumption that the father should recover."

Appellant filed objections to the report, together with the transcript of the hearing and exhibits. On January 4, 1994, the trial court, by separate entries, approved the report and the distribution.

Appellant timely filed a notice of appeal. He presents three assignments of error:

"1. The trial court erred in proceeding with a hearing on distribution of wrongful death proceeds on October 4, 1993.

"2. The trial court erred in considering as a basis for distribution of wrongful death proceeds the various criteria set forth in Ohio Revised Code § 2125.02.

"3. There was an abuse of discretion by the trial court in excluding defendant-appellant from distribution of the wrongful death proceeds."

In his first assignment of error, appellant contends that he was unfairly prejudiced by the failure of the court to send a copy of the administrator's proposed distribution along with the notice of the hearing on the application, and by the failure of the court to specify the issues to be addressed at the hearing, i.e., the approval of the settlement and/or the approval of the proposed distribution.

All interested parties, including appellant, signed a written waiver of notice of hearing on the approval of the wrongful death settlement. Thus, the sole issue which remained to be heard related to the proposed distribution.

C.P.Sup.R. 38(B) provides:

"Unless waived by all interested parties, the application and proposed allocation shall be set for hearing and written notice shall be given to all interested parties."

Civ.R. 73(E) similarly provides that written notice "shall be given in writing." See, also, C.P.Sup.R. 21(A). Appellant has cited no authority, and we have located none, which requires that the proposed distribution be included with the notice of the hearing. Appellant appeared and testified at the hearing, and no prejudice is evident from the transcript. The proposed distribution was on file with the court and available for inspection.

Appellant's first assignment of error is without merit.

Appellant argues in his second assignment of error that the trial court erred in considering the criteria contained in R.C. 2125.02. This statute authorizes the wrongful death action to be commenced in the general division of the court of common pleas and establishes the parameters of the action. R.C. 2125.03 empowers the probate division to distribute the proceeds of a wrongful death award or settlement to the beneficiaries. The latter statute directs the

probate court to "adjust the share of each beneficiary in such manner as is equitable, having due regard for the injury and loss to each beneficiary resulting from the death and for the age and condition of the beneficiaries." R.C. 2125.03(A)(1).

R.C. 2125.03 vests discretion in the court to determine an equitable distribution. See *In re Estate of Cline* (1964), 1 Ohio Misc. 28, 30 O.O.2d 221, 202 N.E.2d 736, paragraph one of the syllabus. R.C. 2125.02(B) provides guidelines to the probate court regarding the types of damages to be considered. See *Burris v. Estate of Burris* (Apr. 15, 1988), Erie App. No. E–87–36, unreported, at 21, 1988 WL 37569. Further, R.C. 2125.02(A) identifies the classes of persons which may qualify as "beneficiaries" among whom the wrongful death proceeds are to be allocated. See *In re Estate of Forbes* (Aug. 25, 1988), Cuyahoga App. No. 54226, unreported, 1988 WL 88853; *Cline* at paragraph three of the syllabus. The trial court did not err in considering the criteria set forth in R.C. 2125.02.

■ Appellant additionally argues that the evidence does not support a finding that he "abandoned" his son as defined in R.C. 2125.02(F)(3), and that, in any event, there was no compliance with division (E) of the statute establishing the procedure to be utilized before such a determination may be made. R.C. 2125.02(A)(1), as amended effective August 3, 1992, provides in part:

"A parent who abandoned a minor child who is the decedent shall not receive any benefit in a wrongful death action brought under this division."

Appellant correctly points out that the above amended provisions apply only to instances where the decedent was a minor. David Marinelli was not a minor at the time of his death. Nevertheless, the amended provisions are inapplicable to this action, as the legislature has indicated that the enactment was to be applied only to "minors who die on or after the effective date of this act * * *." Section 3, Am.Sub.H.B. No. 166. See *Nease v. Med. College Hosp.* (1992), 64 Ohio St.3d 396, 398, 596 N.E.2d 432, 434.

■ The following discussion in *In re Estate of Pope* (June 10, 1994), Tuscarawas App. Nos. 93AP110079 and 93AP120083, unreported, 6–8, 1994 WL 313731, is applicable to the argument made by appellant in the present case:

"Appellant argues that the court erred in applying the 1992 version of R.C. 2125.02 regarding the issue of abandonment.

"Although the court found that appellant had abandoned his daughter, it is clear that the court considered abandonment as a factual component of the proof of loss suffered by appellant, and not as a term with independent legal significance, as it is used in the new version of the statute. The court did not recite the new statute or refer to the new statute concerning abandonment.

"\* \* \* \*

"\* \* \* \* The court's finding that appellant abandoned Trisha related to the question of the loss he suffered, and did not in and of itself prevent him from receiving a portion of the settlement. 'Abandonment' as used by the trial judge in this case was not a legal term of art, as it is under the new statute or under the adoption statute cited by appellant.

"\* \* \* \*

"\* \* \* \* the court does not find that appellant is not entitled to distribution because he abandoned Trisha as a matter of law as set out in the Lawson decision, but rather because he suffered no loss pursuant to R.C. 2125.03."

The court below found that appellant had "effectively abandoned" his sons and that clear and convincing evidence was presented rebutting the presumption that appellant suffered loss by reason of David's death.

The second assignment of error has no merit.

In the third assignment of error, it is argued that the court abused its discretion when it approved the distribution proposed by the administrator. The term "abuse of discretion" "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 173, 404 N.E.2d 144, 149.

A careful review of the record reveals that the referee's findings and conclusions are supported by the evidence and applicable law. There is no basis for a determination that the trial court abused its discretion by excluding appellant from the distribution.

The third assignment of error is without merit.

Based upon the foregoing, the judgment of the probate court is affirmed.

*Judgment affirmed.*

FORD, P.J., and CHRISTLEY, J., concur.