DECISION AND JUDGMENT ENTRY
This is an appeal from a Washington County Common Pleas Court, Probate Division, judgment awarding the proceeds from the settlement of a wrongful death action to Carma Schilling, Alexx Engle, and Jessica Engle, defendants below and appellees herein.
Kay Engle, plaintiff below and appellant herein, raises the following assignments of error for review:
FIRST ASSIGNMENT OF ERROR:
 "THE PROBATE COURT ERRED IN FINDING THAT THE ECONOMIC LOSS TO THE FAMILY WAS ONLY $837,496.00."
SECOND ASSIGNMENT OF ERROR:
 "THE PROBATE COURT ERRED IN FAILING TO FIND THAT APPELLANT DID, OR DID NOT, SUFFER AN EMOTIONAL LOSS AS A RESULT OF HER HUSBAND'S DEATH."
THIRD ASSIGNMENT OF ERROR:
 "THE PROBATE COURT ERRED IN FINDING THAT THE THREE CHILDREN AND THE SURVIVING SPOUSE ALL SUFFERED AN EQUAL DEGREE OF INJURY AS A RESULT OF DECEDENT'S DEATH."
FOURTH ASSIGNMENT OF ERROR:
 "THE PROBATE COURT ERRED IN SETTING OFF COLLATERAL BENEFITS APPELLANT RECEIVED AS A RESULT OF HER HUSBAND'S DEATH AGAINST THE PROVEN LOSS AND AWARDING ALL OF THE PROCEEDS TO THE CHILDREN AS COMPENSATION FOR EMOTIONAL LOSS."
FIFTH ASSIGNMENT OF ERROR:
 "THE PROBATE COURT ERRED IN FINDING THAT DECEDENT'S CHILDREN WERE AS CLOSE TO THEIR FATHER AS COULD BE EXPECTED CONSIDERING THAT THEY ARE ALL ADULTS LIVING THEIR OWN LIVES AND IN AWARDING EACH AN EQUAL SHARE OF THE PROCEEDS."
SIXTH ASSIGNMENT OF ERROR:
 "THE PROBATE COURT ERRED IN FINDING THAT APPELLANT NOW HAS A STEADY BOYFRIEND AND IN CONSIDERING THIS IN DENYING HER ANY OF THE PROCEEDS."
SEVENTH ASSIGNMENT OF ERROR:
 "THE PROBATE COURT ERRED IN CONCLUDING THAT THE DECEASED AND APPELLANT'S MARRIAGE WAS IN TROUBLE BASED UPON THE TESTIMONY OF AN EXTRA-MARITAL AFFAIR AND IN EXCLUDING EVIDENCE THAT NEGATED THIS TESTIMONY."
Our review of the record reveals the following facts pertinent to the instant appeal. On October 3, 1995, Jeffrey N. Engle was fatally injured in a traffic accident. Engle was survived by: (1) appellant, his widow; (2) appellees, his three adult children from previous marriages; (3) his parents; and (4) four siblings.
Appellant, as the administrator of Jeffrey Engle's estate, subsequently instituted a wrongful death action. The parties settled the wrongful death action for $1,000,000. After attorney fees, the amount to be distributed among the beneficiaries totaled $833,937.54. The beneficiaries[1] of the wrongful death proceeds were unable to agree on how to distribute the proceeds. Thus, an application to adjust the shares of the beneficiaries was filed in the probate court. On May 13, 1999 and continuing on July 1, 1999, the probate court held a hearing regarding the distribution of the wrongful death proceeds.
The evidence adduced at the hearing reveals that on August 19, 1992, appellant and Jeffrey married. Jeffrey had been married four times before his marriage to appellant. Each marriage was of a short duration.
Jeffrey's most recent ex-wife, Becky Scott, testified that she and the deceased had been engaged in an affair at the time of Jeffrey's death and throughout his marriage to appellant. Scott testified that she believed appellant's marriage was troubled.
Contrary to Scott's suggestion, appellant testified that she and Jeffrey were in love. Appellant denied any allegation that her marriage was troubled. Appellant testified that she suffered tremendous emotional loss as a result of Jeffrey's death. Appellant admitted that subsequent to Jeffrey's death, she had found a male companion, Frank Davis. Appellant denied, however, any allegation that she and Davis had plans to marry.
Appellant further explained that she suffered economic injury as a result of Jeffrey's death. Appellant testified that Jeffrey performed the majority of the home repair and maintenance.
Charles Shockey, one of Jeffrey's friends, further helped to explain the loss that appellant suffered. Shockey stated that Jeffrey had a strong work ethic and explained that Jeffrey always was busy working on one project or another. Shockey estimated that Jeffrey worked thirty or forty hours per week maintaining the home, the boat, and the cars.
To further demonstrate the financial loss appellant suffered as a result of Jeffrey's death, appellant presented the testimony of John F. Burke, Jr., an economist. Appellant requested the economist to: (1) evaluate Jeffrey's earning capacity and the present value of that stream of income; (2) consider the unpaid value of Jeffrey's services around the house and the cost of replacing those services; and (3) determine the present value of a series of pension payments. Burke explained that in reaching his estimations, he assumed the interest rate to be two and one-half percent.
Burke stated that if Jeffrey had worked to his statistical work life expectancy of 61.6 years, he would have earned wages and fringe benefits that have a present value of $1,040,108. Burke further explained that: (1) if Jeffrey had worked to age 65, the present value of his earnings and benefits would be $1,235,581; and (2) if Jeffrey had worked to age 66, the present value of his earnings and benefits would be $1,290,922. Burke explained that after deducting the amount that statistically would be spent on personal consumption, the loss to the family, if Jeffrey had worked until age 66, would be $954,407.
Burke estimated the value of Jeffrey's contribution to the household to be $319,150. In reaching his figure, Burke explained that he assumed that Jeffrey performed an average of twenty hours per week on services around the house and that the cost to replace his services would cost approximately $10 per hour. Burke further estimated the present value of appellant's pension to be $35,608.33.
On cross-examination, Burke admitted that the figures would decrease if one assumed the interest rate to be five percent. Burke stated that assuming the interest rate was five percent, the present value of the deceased's earnings if he worked until age 66 would be $837,496.
The evidence also revealed that appellant received certain secondary benefits as a result of Jeffrey's death. Appellant received the following amounts under various life insurance policies: (1) Primerica Life Insurance, $201,235; (2) Aetna Life Insurance, $81,435; and (3) All American Life Insurance, $1,000. Appellant also received: (1) $35,608 in pension benefits; (2) $5,500 from the proceeds of the sale of a vehicle; (3) $49,044 from the distribution of Jeffrey's estate; and (4) $35,520 from the net value of the home.
On November 19, 1999, the trial court found that appellant was not entitled to any of the wrongful death proceeds and ordered the proceeds divided equally among appellees. The trial court found that appellees and appellant "all suffered an equal degree of injury and loss as a result of the death of Jeffrey N. Engle." The trial court concluded, however, that the non-wrongful death assets that appellant received as a result of the deceased's death adequately compensated her loss.
In reaching its decision to award all of the unlawful death proceeds to appellees, the trial court stated that it considered the assets that appellant received as a direct result of Jeffrey's death. The trial court noted that the value of the assets appellant received totaled $409,000. The trial court further reasoned as follows:
 "[T]he Court believes given the amount of wrongful death proceeds available for distribution, the short duration of the marriage, the trouble in the marriage, and the loss suffered by [appellees], that [appellant's] injury and loss was more than adequately satisfied by the non-wrongful death proceeds she received. The amount of cash [appellant] received nearly equals the distribution to each [appellee] pursuant to this decision."
Appellant filed a timely notice of appeal from the trial court's judgment.
 I
Because all of appellant's assignments of error relate to the propriety of the trial court's decision to award appellees the entire proceeds of the wrongful death settlement, we first consider the general framework within which courts must be guided when distributing wrongful death proceeds.
When the beneficiaries of a wrongful death settlement are unable to agree on the distribution of the proceeds, R.C. 2125.03(A)(1) directs the trial court to "adjust the share of each beneficiary in a manner that is equitable, having due regard for the injury and loss to each beneficiary resulting from the death and for the age and condition of the beneficiaries."[2] In considering the injury and loss to each beneficiary, the trial court should consider the factors outlined in R.C. 2125.02(B). See, generally, In re Thomas (Apr. 12, 2000), Summit App. No. 19588, unreported; In re Walter (Oct. 13, 1999), Medina App. No. 2942-M, unreported; In re Estate of Forbes (Aug. 25, 1988), Cuyahoga App. No. 54226, unreported. The factors include: (1) loss of support; (2) loss of services; (3) loss of the society; (4) loss of prospective inheritance; and (5) mental anguish. See R.C. 2125.02(B).
We note that no "precise mathematical formulae" exist for apportioning wrongful death proceeds among beneficiaries. See, e.g., In re Cline
(1964), 1 Ohio Misc. 28, 30, 202 N.E.2d 736; see, also, Thomas. Rather, a trial court must possess considerable discretion to apportion the benefits in a manner that is "equitable." See id.; see, also, Thomas; Inre Straszheim (Apr. 7, 2000), Montgomery App. No. 18046, unreported. Consequently, a reviewing court should not reverse a trial court's decision regarding the distribution of wrongful death proceeds unless the trial court clearly abused its discretion. See In re Estate of Marinelli
(1994), 99 Ohio App.3d 372, 378, 650 N.E.2d 935; see, also, Thomas;Straszheim. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, 1142 (quoting State v.Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144, 149).
With the foregoing principles in mind, we now turn to appellant's assignments of error.
 II
We first consider, out of order, appellant's fourth assignment of error. Appellant asserts that the trial court erred by considering the secondary benefits appellant received as a direct result of the deceased's death. Appellant cites In re Hackworth (June 4, 1993), Hancock App. 93-WL-2341, unreported, in support of her argument.
In Hackworth, the trial court distributed sixty-one percent of the wrongful death proceeds to the deceased's wife and thirteen percent to each of the deceased's adult children. In reaching its decision, the trial court apparently considered the amount of property that the wife inherited and the money she received through life insurance proceeds and retirement benefits. The court of appeals, however, determined that the trial court erroneously considered the non-wrongful death proceeds. The court stated:
 "Property inherited by [the wife] and any money paid to her as a result of [the deceased's] death are irrelevant to distribution of the wrongful death proceeds. Whether [the deceased] left [the wife] one dollar or one million dollars is irrelevant as [the wife] still sustained a loss of $750,000 in lost wages alone."
We disagree with the Hackworth court that a trial court is strictly prohibited from considering the value of assets that a surviving spouse may otherwise have received as a result of the deceased's death. Rather, in keeping with the language of R.C. 2125.03(A) we believe that a trial court retains discretion to do what is equitable in view of the unique facts and circumstances present in each particular case. We do not believe that a bright-line rule prohibiting a trial court from considering money inherited or money received through life insurance benefits effectuates the statute's intent to afford a trial court discretion in fashioning an equitable distribution of the wrongful death proceeds.
Furthermore, although not directly raised by appellant, we do not believe that the trial court abused its discretion by concluding that an equitable distribution of the wrongful death proceeds could best be accomplished by awarding, in equal amounts, the entire amount of the proceeds to the appellees. The trial court found that: (1) Jeffrey and appellant's marriage was troubled (2) the children, although adult, suffered loss through the wrongful death of their father; (3) the loss of earnings totaled $837,496; and (4) appellant received approximately $409,000 dollars in non-wrongful death benefits. The court also noted that each of appellant's four previous marriages had been of short duration.
Given the foregoing circumstances, the trial court could rationally have concluded that the $409,000 appellant received adequately compensated her for her loss. While appellant undoubtedly suffered economic and emotional injury as a result of Jeffrey's death, we simply cannot find that, under the facts present in the case at bar, the trial court abused its discretion by denying appellant a share of the wrongful death proceeds.
Accordingly, based upon the foregoing reasons, we overrule appellant's assignment of error.
 III
In reviewing appellant's remaining assignments of error, we note that all of the assigned errors relate to the trial court's factual findings. Appellant contends, in essence, that the weight of the evidence does not support the trial court's judgment. Because these assignments of error raise related issues, we consider them together.
Initially, we note that when reviewing a trial court's judgment, "it is well established that every reasonable presumption must be made in favor of the judgment and findings of fact." Shemo v. Mayfield Heights (2000),88 Ohio St.3d 7, 10, 722 N.E.2d 1018, 1022; see, also, Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77, 10 Ohio B. Rep. 408,461 N.E.2d 1273. A trial court's factual findings will not be disturbed on appeal unless the court's findings are against the manifest weight of the evidence. See, e.g., Home Builders Assn. Of Dayton v. Beavercreek
(2000), 89 Ohio St.3d 121, 129-30, 729 N.E.2d 349, 357. A factual finding is not against the manifest weight of the evidence unless the record fails to contain competent, credible evidence to support the trial court's factual finding. See, e.g., Vogel v. Wells (1991),57 Ohio St.3d 91, 566 N.E.2d 154; Ross v. Ross (1980), 64 Ohio St.2d 203,414 N.E.2d 426.
When reviewing a trial court's factual findings, the reviewing court must remain mindful that "[w]hen reaching a factual determination, the trial court is in the best position to evaluate the testimony of witnesses and the evidence presented." Home Builders,89 Ohio St.3d at 129, 729 N.E.2d at 357. As aptly stated in Seasons Coal,10 Ohio St.3d at 80, 461 N.E.2d at 1276:
 "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."
With the foregoing principles in mind, we turn to the specific factual findings that appellant contends are against the manifest weight of the evidence.
In her first assignment of error, appellant argues that the trial court erred by finding that the economic loss to the family was $837,496. Appellant contends that the uncontroverted evidence demonstrates that the present value of Jeffrey's earnings and benefits totals $913,407. We disagree.
Appellant's economic expert testified that the present value of Jeffrey's earnings and benefits depended upon the interest rate used. On cross-examination, the expert estimated the present value of the deceased's earnings and benefits to be $837,496, if employing a five percent interest rate. Thus, the trial court had before it sufficient credible and competent evidence to find that the present value of the earnings and benefits was $837,496. Consequently, we disagree with appellant that the trial court erred by finding that the economic loss to the family was $837,496.
In her second assignment of error, appellant argues that the trial court erred by failing to make a specific factual finding regarding appellant's emotional loss as a result of her husband's death. Again, we disagree. We note that the trial court found that appellant and appellees suffered an equal degree of injury and loss. Initially, we point out that a trial court is not required to issue findings of fact and conclusions of law unless a party requests the court to do so. See Civ.R. 52. Civ.R. 52 specifically provides that "judgment may be general for the prevailing party unless one of the parties in writing requests otherwise * * *." In the case at bar, neither party filed a request for findings of fact and conclusions of law pursuant to Civ.R. 52. The failure to file a timely request for findings of fact and conclusions of law waives the right to challenge the trial court's lack of an explicit finding with respect to an issue. See Pawlus v. Bartrug (1996), 109 Ohio App.3d 796, 801,673 N.E.2d 188, 191 ("Civ.R. 52 provided the appellants with a means after entry of the judgment to obtain separate findings of fact and conclusions of law by which we could test the trial court's judgment. Having failed to do so, they cannot be heard to complain that the court did not make the necessary findings."); Wangugi v. Wangugi (Apr. 12, 2000), Ross App. No. 2531, unreported; Ruby v. Ruby (Aug. 11, 1999), Coshocton App. No. 99 CA 4, unreported.
Thus, we disagree with appellant that the trial court erred by failing to enter a specific finding regarding appellant's emotional loss.
In her third assignment of error, appellant argues that the trial court erred by finding that appellant and the three children suffered an "equal degree of injury" as a result of the deceased's death. Appellant argues that while both she and appellees suffered emotional damages, only appellant suffered pecuniary injury due to the loss of support and services.
We, however, do not believe that any error associated with the trial court's factual findings affects the ultimate outcome in the case at bar. Appellant received $409,342 as a direct result of the deceased's death. Each appellee received approximately $277,979 in wrongful death proceeds. The trial court could have rationally concluded that the $409,342 appellant received adequately compensated her for her pecuniary and emotional loss. We therefore disagree with appellant that the trial court erred by finding that appellant and appellees each suffered an equal degree of injury.
In her fifth assignment of error, appellant argues that the trial court erred in finding that Jeffrey's adult children were as close to their father as could be expected, considering that they are all living their own lives, and in awarding each an equal share of the proceeds.
The trial court, as the finder of fact, was in the best position to weigh the evidence. The trial court heard evidence regarding each child's relationship with his or her father. We cannot, as a court reviewing a cold record, conclude that the trial court erred by finding that the children were as close to their father as could be expected. The record contains sufficient competent and credible evidence to support the trial court's finding.
In her sixth assignment of error, appellant argues that the trial court erred by finding that appellant has a "steady boyfriend" and in considering this fact when denying her a share of the wrongful death proceeds. First, we note that some evidence exists in the record to support the trial court's finding. Appellant testified that she has dated another man, Frank Davis. Shockey stated that he has seen appellant together with Davis. We will not disturb the trial court's finding.
Second, we do not believe that the trial court inappropriately considered appellant's relationship with another man when determining how to distribute the wrongful death proceeds. In reaching its decision to award appellees all of the wrongful death proceeds, the trial court did not specifically state that it considered appellant's relationship with Davis. Rather, the trial court stated that its decision was based upon,inter alia, the following factors: (1) appellant's receipt of approximately $409,000; (2) the short duration of appellant's and Jeffrey's marriage; and (3) the trouble in the marriage. Thus, we disagree with appellant that the trial court erred by finding that appellant has a steady boyfriend and by improperly considering appellant's present relationship.
In her seventh assignment of error, appellant argues that the trial court erred by finding that appellant and the deceased's marriage was troubled. We disagree.
Becky Scott, the deceased's former wife, testified that she had been having an affair with the deceased. Appellant testified, however, that she had a strong, untroubled marriage. We recognize that a conflict in evidence exists. However, ample evidence exists, if believed, in the record to support the trial court's finding.
Within her seventh assignment of error, appellant further asserts that the trial court erred by excluding a witness from testifying. Appellant contends that Greg Gentry would have testified that Jeffrey told Gentry that appellant and Jeffrey had a good marriage. Appellees argue that because appellant failed to timely disclose the witness, and thus failed to comply with Civ.R. 26, the trial court possessed discretion to exclude the witness's testimony.
Civ.R. 37 authorizes a trial court to exclude a witness's testimony for failure to comply with the discovery rules. See Huffman v. Hair Surgeon,Inc. (1985), 19 Ohio St.3d 83, 84, 482 N.E.2d 1248, 1250. Absent an abuse of discretion, a reviewing court will not reverse a trial court's ruling regarding Civ.R. 37 sanctions. See, e.g., Nakoff v. Fairview Gen. Hosp.
(1996), 75 Ohio St.3d 254, 662 N.E.2d 1, syllabus; Hall v. Mainous (Aug. 18, 2000), Scioto App. No. 99 CA 2680, unreported. In Huffman, the court explained the phrase "abuse of discretion" as follows:
 "`[A]n abuse of discretion involves far more than a difference in * * * opinion * * *. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an `abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather passion or bias. * * *' State v. Jenkins (1984), 15 Ohio St.3d 164, 222."
Id., 19 Ohio St.3d at 87, 482 N.E.2d at 1252. We note that when applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. See, e.g., State ex rel. Duncanv. Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728, 732, 654 N.E.2d 1254,1258; In re Jane Doe (1991), 57 Ohio St.3d 135, 137-38, 566 N.E.2d 1181,1184.
In the case at bar, we find no abuse of the trial court's discretion. The trial court's decision to exclude appellant's untimely disclosed witness was not "so palpably and grossly violative of fact and logic,"Huffman, so as to constitute an abuse of discretion. See Paugh Farmer,Inc. v. Menorah Home for Jewish Aged (1984), 15 Ohio St.3d 44,472 N.E.2d 704 (stating that trial court did not abuse its discretion by excluding an expert witness when the expert's report was not timely filed pursuant to the local court rules).
Accordingly, based upon the foregoing reasons, we overrule appellant's first, second, third, fifth, sixth, and seventh assignments of error.
JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court, Probate Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, J.: Dissents with Dissenting Opinion
Kline, P.J.: Concurs in Judgment Opinion
 ___________________________ Peter B. Abele, Judge
[1] Apparently, a determination was made that appellant and appellees were the only beneficiaries to the wrongful death proceeds.
[2] R.C. 2125.03 provides in pertinent part:
Distribution of award
(A)(1) The amount received by a personal representative in an action for wrongful death under sections 2125.01 and 2125.02 of the Revised Code, whether by settlement or otherwise, shall be distributed to the beneficiaries or any one or more of them. The court that appointed the personal representative, except when all of the beneficiaries are on an equal degree of consanguinity to the deceased person, shall adjust the share of each beneficiary in a manner that is equitable, having due regard for the injury and loss to each beneficiary resulting from the death and for the age and condition of the beneficiaries. If all of the beneficiaries are on an equal degree of consanguinity to the deceased person, the beneficiaries may adjust the share of each beneficiary among themselves. If the beneficiaries do not adjust their shares among themselves, the court shall adjust the share of each beneficiary in the same manner as the court adjusts the shares of beneficiaries who are not on an equal degree of consanguinity to the deceased person.