The Summit County Probate Court awarded Joan Roberts $5000 in extraordinary fiduciary fees, as administrator de bonis non of her mother's estate, pursuant to R.C. 2113.36. The court ordered the remaining balance from her mother's wrongful death settlement, after fees and expenses, to be split between Roberts and her brother, Charles Biley, with Roberts receiving sixty percent and Biley receiving forty percent. Biley has appealed both the award of extraordinary fiduciary fees, and the unequal split of the settlement.
Biley has asserted that the probate court erred when it (1) overruled his motion in limine to exclude the testimony of Attorney A. William Zavarello; (2) improperly awarded extraordinary fiduciary to Roberts; and (3) abused its discretion by awarding Roberts a larger share of the settlement. We overrule Biley's first and third assignments of error. The second assignment of error is sustained.
 I
Elaine Mae Thomas died on May 28, 1992, from complications of lung cancer. Her will, executed on March 16, 1979, directed that her estate be split equally between her two children, Roberts and Biley. In her will, Thomas named Biley the executor of her estate. She named Roberts to serve in the event that Biley was unwilling or unable.
Biley served as executor from his appointment on June 4, 1992, through October 23, 1992, when he was removed during a magistrate's hearing on Roberts' motion for his removal.[1]
The court journalized its appointment of Roberts as the administrator de bonis non of her mother's estate on December 18, 1992.
Shortly after Thomas was diagnosed with lung cancer in 1991, she discovered that her medical team had lost a lung biopsy, taken eighteen months earlier when she was treated for pneumonia. During that period, her undiagnosed and untreated tumor grew from the size of a pea to the size of a peach. Before her death, she explored filing a medical malpractice action. A little over a month before her death, she signed a fee agreement with Attorney Zavarello for the purpose of "advocat[ing her] case against Kaiser."
Roberts and Biley disagreed as to whether to pursue a wrongful death action on their mother's behalf. At the distribution hearing Biley testified that "[I]t was very clear to [him]" that his mother did not want to bring the lawsuit. Despite his belief that his mother did not want to pursue the lawsuit, Biley did consult with a personal injury attorney about the matter. Although he did not want to pursue the lawsuit, Biley asserted that, he "never refused" to bring the lawsuit on behalf of the estate.
Roberts, on the other hand, aggressively pursued the lawsuit. She testified at the distribution hearing that her mother "asked [her] to find a lawyer." She went with her mother to Attorney Zavarello's office on at least three occasions before her mother's death. Roberts also signed a separate fee agreement with Zavarello with respect to her mother's case. She testified that her mother definitely wanted to pursue the lawsuit, and "was very angry from the moment she found out that they diagnosed [her] * * *. She was angry that she had been cheated." Earlier in the removal hearing, Roberts testified that her mother "wanted them to know what they did to her, and she wanted Zavarello to, more or less, punish them."
Although he had consulted a personal injury attorney, as of the October 23, 1992 removal hearing, Biley had not hired an attorney or filed a complaint. At a later hearing Biley testified that it was his understanding that the lawsuit "could have been filed within another 90 days." Attorney Zavarello testified at the removal hearing that the statute of limitations would expire on October 24, 1992, and that immediate action was needed in order to avoid the action being barred by the statute of limitations. The magistrate removed Biley as executor, because of his indecision about the lawsuit, and appointed Roberts to replace him.
The wrongful death lawsuit was filed on Monday, October 26, 1992. Although Roberts was initially unsuccessful, the Supreme Court of Ohio ultimately decided in her favor. It determined that, even when the chance of survival or recovery was less than fifty percent, an individual is permitted to recover damages for the lost chance of survival if the negligence of the health care provider increased the patient's risk. Roberts v. OhioPermanente Med. Group, Inc. (1996), 76 Ohio St.3d 483, syllabus. Following the decision by the Ohio Supreme Court, the parties settled the claim for $100,000.
When Roberts was appointed administrator de bonis non, the estate was valued at approximately $58,570. The record does not indicate the value of Thomas' estate at her death, nor does the record contain any information regarding the payment of a fiduciary commission to Biley, other than Robert's testimonial assertion that Biley had been paid $900 or $960.[2] The record contains two partial accountings filed by Roberts; neither reflected the payment of any fiduciary fees. On June 5, 1996, Roberts was ordered to file her application for fiduciary fees within thirty days. No subsequent application for ordinary fiduciary fees is contained in the record.
On May 15, 1998, an agreed entry stipulated that Biley would receive $1000 from the remaining estate funds, which were then being held in escrow by his attorney. No further distributions were to be permitted "until all claims against the estate have been satisfied." As of the termination of the wrongful death action, the estate itself does not appear to have been finally settled.
On October 21, 1998, Roberts filed an application with the court seeking approval of the wrongful death settlement and distribution. She requested that Attorney Zavarello be paid $41,164.63 to cover costs and attorney fees. Roberts' initial application for approval and distribution of the settlement did not request ordinary or extraordinary fiduciary fees, or suggest the portion of the distribution each beneficiary should receive.[3] The court approved the settlement and the payment to Zavarello. It ordered an evidentiary hearing on the matter of distribution to take place on November 3, 1998.
Biley made a motion in limine to prevent the October 23, 1992 hearing transcript from the being used in the distribution hearing. The motion also requested that Attorney Zavarello not be permitted to testify at the hearing because his "testimony * * * is irrelevant, will confuse the real issues and be more prejudicial than probative." On the day of the hearing Roberts filed an amended application and an initial fee application requesting fiduciary fees in the amount of $10,000. The magistrate did not explicitly rule on the motion in limine, but Attorney Zavarello was permitted to testify and the transcript from the removal hearing was used during the distribution hearing.
Following the hearing, the magistrate issued a decision. The magistrate determined that:
 Both son and daughter had an individual relationship with their mother.
Both grieved as a result of their mother's death.
 Both attempted to administer their mother's estate, with varying degrees of success, as evidenced by the numerous exceptions, hearings and Court orders filed during the administration of the estate.
 It was beneficiary Roberts' desire to carry the wrongful death case to its fruition.
 It was beneficiary Biley's lack of decision with regard to the wrongful death case that caused his removal.
Both have suffered equally as far as mental anguish and grief.
Roberts was awarded $5000 in extraordinary fiduciary fees, and sixty percent of the remainder of the proceeds. The court awarded Biley the remaining forty percent.
Both parties objected to the magistrate's decision. Biley argued that both the fiduciary fees and the division of the balance were contrary to law. Roberts argued that she should have been awarded "a greater percentage of the wrongful death proceeds than 60 percent." The court held a hearing on the objections. Following the hearing, the court overruled the objections of both parties, and adopted the magistrate's decision, awarding $5000 in extraordinary fiduciary fees to Roberts and ordering the balance of the settlement split sixty-forty between Roberts and Biley.
 II Motion in limine
Biley has asserted that the probate court erred by overruling his motion in limine. The Supreme Court of Ohio has affirmed that,
 "[a]n order granting or denying a motion in limine is a tentative, preliminary or presumptive ruling about an evidentiary issue that is anticipated. An appellate court need not review the propriety of such an order unless the claimed error is preserved by a timely objection when the issue is actually reached during the trial."
 State v. Grubb (1986), 28 Ohio St.3d 199, 203, quoting State v. Leslie (1984), 14 Ohio App.3d 343, 344.
Biley has not asserted on appeal that the use of the October 1992 transcript was erroneous. At the time Zavarello was called to the stand, Biley did not object to permitting him to testify. As a result, he did not preserve a general objection to the propriety of allowing Zavarello to testify. Because of this, we will not review the general question of whether the court should have excluded Zavarello's testimony in its entirety.
Biley has identified five specific portions of Attorney Zavarello's testimony that he found objectionable. Of those five, he objected to only three. By failing to object, Biley has waived the right to appellate review of the unchallenged portions of testimony.
In the first testimonial exchange that he preserved for review, Roberts asked why Biley was not the Plaintiff in the wrongful death case. Biley objected to the question, and the court overruled his objection. The question was relevant to determining whether the court appropriately awarded a greater share of the settlement to Roberts, as discussed infra at. Biley did not object to Zavarello's answer to the question.
In the second instance, Zavarello was asked whether Roberts should be compensated for the work she did in pursuit of the case. Because Zavarello was working with Roberts on the wrongful death claim, he was in a position to know the extent of her involvement in pursuing the claim on behalf of the estate. The question was appropriate and relevant to determining the distribution of the ultimate settlement, as discussed infra at. It was not error for the court to overrule Biley's objection to it. Zavarello responded with a tirade about Biley, testifying, in part, to stories he had heard from other individuals. The court properly sustained an objection to that testimony.
The probate court also sustained Biley's objection to the third identified, and objected to, portion of Zavarello's testimony.
Biley did not preserve a general objection to the testimony of Attorney Zavarello. The probate court appropriately dealt with the testimonial exchanges to which Biley both objected and contended on appeal were improper.
 B. Fiduciary Fees
The award of a fiduciary commission is governed by R.C.2113.35. Generally, the commission is a percentage of the gross proceeds from the sale of estate property, or of the fair market value of the decedent's unsold property, so long as that property is includable for the purposes of computing the Ohio estate tax. R.C. 2113.35. An award of ordinary fees may not be decreased in order to make it consonant with the value of the services rendered; it may only be decreased because the administrator "has not faithfully discharged his duties." R.C. 2113.35.
In the event that the administration of an estate requires the performance of extraordinary services, R.C. 2113.36 provides a means to award additional compensation to the executor. R.C.2113.36 provides that, "Allowances, in addition to [the basic commission], which the probate court considers just and reasonable shall be made for actual and necessary expenses and for extraordinary services not required of an executor * * * in the common course of his duty."
When a request for extraordinary fees is made, the court:
 shall review both ordinary and extraordinary services claimed to have been rendered. If the commissions payable pursuant to section 2113.35 of the Revised Code, exceed the reasonable value of such ordinary services rendered the court must adjust any allowance made for extraordinary services so that the total commissions and allowance to be made fairly reflect the reasonable value of both ordinary and extraordinary services.
 (Emphasis added.) R.C. 2113.36. By its plain language, the statute requires the court to review the total fees payable to the administrator when it contemplates making a payment of fees beyond the commission authorized for ordinary services.
In sum, the ordinary commission to which an administrator is presumptively entitled is based on the size of the estate. Absent misfeasance or malfeasance, the value of the services the estate receives for the commission it pays is irrelevant until extraordinary fees are requested. If the estate is required to pay more than the standard commission, it is entitled to reasonable services for the entire payment it makes. Any adjustment for value must be made to the extraordinary portion of the fiduciary fees, because the ordinary commission cannot be reduced, even if the reasonable value of the fiduciary services the estate received is far lower than the commission it paid to the fiduciary.
The magistrate heard testimony regarding both the ordinary and extraordinary services. From the testimony, and from the accountings contained in the record, the magistrate could have determined the "reasonable value of both ordinary and extraordinary services." Nothing in the record, however, reveals the "commissions payable pursuant to section 2113.35." The size of the estate, when Roberts began administering it is known; its original size is not. Roberts testified that Biley received $900 or $960 in fiduciary fees for his service as administrator. The record does not confirm or contradict this. Nor does it address whether Biley was paid the commission for the entire estate and, if not, what amount remained to be paid to the successor administrator. Based on the June 5, 1996 order, that Roberts make her application for fiduciary fees within thirty days, it is clear that the court anticipated that there would be some commission payable to Roberts. The record does not contain either a later application for fiduciary fees, or an order granting them.
On May 15, 1998, an agreed entry stipulated that Biley would receive $1000 from the remaining estate funds, then being held in escrow by his attorney. It also directed that no further distributions were to be permitted "until all claims against the estate have been satisfied." The record does not indicate any further distribution from or settlement of the estate.
Following the hearing, the court awarded Roberts $5000 "for her services with respect to the wrongful death action." A determination that her extraordinary services on behalf of the estate were appropriately valued at $5000 may not be an abuse of discretion. The record does not reflect that the magistrate, or the probate court when it adopted the magistrate's decision, reviewed the total fiduciary award to Roberts in light of the value of both her ordinary and extraordinary services. Because of the mandatory interrelation between the commission and any extraordinary fee award, it was wrong as a matter of law, for the court to award extraordinary fees without considering whether the total compensation was reasonable in light of the value of all the services Roberts rendered. Biley's second assignment of error is sustained.
 C. Distribution
When the beneficiaries of a wrongful death settlement cannot agree on the division, the distribution of the proceeds is governed by R.C. 2125.03(A)(1). The court that appointed the personal representative is directed to "adjust the share of each beneficiary [of equal degree of consanguinity to the decedent] in a manner that is equitable, having due regard for the injury and loss to each beneficiary resulting from the death and for the age and condition of the beneficiaries." Because the specific distribution is left to the sound discretion of the court, id.,
that distribution will not be disturbed unless it is demonstrated that the distribution was arbitrary, unreasonable, or unconscionable, Jennings Churella Constr. Co. v. Lindley (1984),10 Ohio St.3d 67, 70.
In order to decide what would be an equitable distribution of the settlement, the court is to consider the injury and loss to each beneficiary as a result of the death of his or her loved one. R.C. 2125.03(A)(1). To the extent that it is possible to quantify such a loss, the five factors that would justify an award of compensatory damages provide a means of doing so. R.C.2125.02(B). See, also, In re Estate of Forbes (Aug. 25, 1988), Cuyahoga App. No. 54226, unreported. Biley has suggested that the extent of each individual's injury and loss, as encompassed in those five factors, is the only consideration permitted when making an equitable distribution of the award.
It is clear from the language of the distribution statute that the division of a wrongful death award is not strictly limited by the factors that initially entitled the beneficiaries, as a group, to compensatory damages. In addition to considering each beneficiary's personal loss, the distribution statute directs the court to consider the age and condition of each beneficiary when it apportions the award. R.C. 2125.03(A)(1). The age and condition of an individual are not characteristics that would entitle a beneficiary to compensatory damages. See R.C.2125.02(B). When the court considers how the award is to be shared, a determination has already been made that the beneficiaries are entitled to compensation for their losses. The direction to give due regard to the individual characteristics of age and condition permits the court to balance the circumstances of one beneficiary against those of another, in addition to considering the loss suffered by each. This is consistent with Inre Estate of Cline (Cuyahoga P.C. 1964), 1 Ohio Misc. 28, a case both parties cited as governing the distribution of this award. Prior to proceeding with the division of the wrongful death judgment before it, the Cline court examined the statute. The court determined that the statute charged it with making the distribution in a manner that is equitable, "without regard to the statute of descent and distribution and without regard for any precise mathematical formulae." In re Estate of Cline,1 Ohio Misc. at 30. Similarly, the probate court below was charged with making the distribution in an equitable manner, without being strictly limited to a set of factors that only represent some portion of the factors that might make a particular distribution equitable or inequitable.
The court found that Biley and Roberts each had a relationship with their mother, and that each suffered, and grieved as a result of her premature death. Reading the probate court's final finding of fact broadly, the probate court determined that their losses were equal. Based on these facts alone, an equitable split would probably also be an equal split.
The court also implicitly found that there would be no wrongful death settlement to distribute, but for Roberts' perseverance in the face of Biley's indecision. Roberts' effort to hold the medical facilities responsible for their failure to diagnose her mother's early stage cancer is not explicitly a factor which would entitle her to compensatory damages, pursuant to R.C. 2125.02(B). Nor is it explicitly a factor under the distribution statute. R.C. 2125.03(A)(1). It is a factor, however, which is related to whether a specific distribution plan for the wrongful death settlement owed jointly to Roberts and Biley is equitable. Roberts was responsible for maintaining the wrongful death action; Biley wanted to drop it. It was not unreasonable, arbitrary, or unconscionable for the court to determine that it was equitable to distribute a slightly larger share of the settlement to Roberts because of her role in ensuring that there was a settlement to distribute. Biley's third assignment of error is overruled.
 III
We overrule Biley's first assignment of error because Biley did not properly preserve a general objection to Zavarello's testimony for appellate review and because the probate court properly handled the few specific objections that Biley made. Because an award of extraordinary fiduciary fees must be adjusted so that the value of the all the fiduciary's services to the estate corresponds to the total compensation paid by the estate, the trial court's award of extraordinary fees without considering the regular commission was inappropriate. Biley's second assignment of error is sustained. Because the probate court is required to make an equitable distribution of the proceeds from a wrongful death settlement, taking into consideration both the losses suffered by each beneficiary and the personal circumstances of each beneficiary, it did not abuse its discretion when it awarded Roberts a slightly larger share of the award. Biley's third assignment of error is overruled.
The portion of the judgment that grants Roberts sixty percent of the balance of the wrongful death settlement, and Biley forty percent, is affirmed. The portion of the judgment awarding extraordinary fiduciary fees is reversed and remanded for further consideration not inconsistent with this opinion.
Judgment affirmed in part, reversed in part, and causeremanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
Exceptions.
 ______________________________ WILLIAM R. BAIRD FOR THE COURT
SLABY, J. and CARR, J. CONCUR
[1] What is apparently the transcript of the October 23, 1992 hearing was filed on November 3, 1998, in conjunction with a hearing before a magistrate on the distribution of Thomas' wrongful death settlement proceeds. The certification attached to the transcript indicates that it is a transcript of a "hearing * * * commencing on Friday, March 13, 1998." The transcript contains the phrase, "And this October 24, 1992 date, which is tomorrow." Both parties refer to the document as a transcript of the October 23, 1992 hearing. Although Biley challenged the use of the transcript as prejudicial through a motion in limine, neither party has asserted that the transcript was not of the October 23, 1992 hearing.
[2] The certified record on appeal begins with Roberts' appointment as administrator de bonis non. It does not contain any information from the six months during which Biley administered the estate, unless such information was made part of the record during one of the numerous hearings while Roberts was administrator.
[3] Although the application did not suggest a distribution, Attorney Zavarello prepared a draft for approval of the settlement and distribution award giving one hundred percent of the proceeds to Roberts, and nothing to Biley. The alteration of the document was discussed during the distribution hearing. At that time, the magistrate indicated that, "[I]t called for a specific distribution which was not agreed upon * * * [a]nd I whited out that information."