HOOKS, Appellant,

v.

OWEN et al., Appellees.

[Cite as *Hooks v. Owen* (1998), 130 Ohio App.3d 38.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 95 C.A. 224.

Decided Sept. 23, 1998.

*Laurie F. Starr,* for appellant.

*Michele G. Cerni,* for appellees.

Cox, Judge.

This timely appeal arises from a September 21, 1995 judgment entry of the Mahoning County Common Pleas Court, Probate Division, ordering the distribution of funds and the payment of attorney fees and expenses from settlement proceeds paid by Presbyterian University Hospital, Allegheny County, Pennsylvania to James W. Owen, decedent, in favor of defendants-appellees, Tim Owen

and Kim Owen, despite the fact that the last will and testament of decedent designated plaintiff-appellant, Lynda Hooks, as the sole beneficiary of his estate. The court's decision was based on a determination that the settlement proceeds should be characterized predominantly as wrongful death rather than survival proceeds.

Appellant lived with the decedent for approximately nine years prior to his death. Though appellant and the decedent were not legally married, their relationship was such that many of their close friends had initially presumed that they were husband and wife. Appellees, Tim and Kim Owen, were the decedent's brother and sister.

The record reveals that the March 23, 1992 death of James W. Owen resulted in part from complications arising from negligent administration of the drug Lisinopril by medical personnel employed by Presbyterian University Hospital in Pittsburgh, Allegheny County, Pennsylvania. Since decedent resided in Mahoning County, his will was admitted to Mahoning County Probate on April 8, 1992. George Paree, executor of decedent's estate, subsequently retained attorney William Masters of Cleveland, who in turn contacted attorney Neil Rosen of Pittsburgh to pursue a negligence claim relative to Owen's death.

Since the negligent act occurred in Pennsylvania, Rosen testified that his trial strategy was to file both wrongful death and survival actions in Pennsylvania on behalf of both appellant and appellees, even though Pennsylvania does not allow brothers or sisters of the decedent to recover for wrongful death. Rosen further testified that he presumed that damages would be governed by the Mahoning County Probate Division, on the basis that any damages awarded would be subject to Ohio estate tax law. Though a writ of summons was filed in the Allegheny County Court on February 2, 1994, settlement negotiations were concluded with representatives of the hospital before the claim progressed any further.

Rosen prepared a petition to settle wrongful death and survival claims, but this petition was never filed with the Allegheny County Common Pleas Court. Instead, a petition to approve the settlement was filed with the Mahoning County Probate Court on July 19, 1994.

With no jurisdictional objections raised by the parties, hearing on the proffered settlement for damages for decedent's wrongful death was held in the Mahoning County Probate Court on August 3, August 26 and October 24, 1994. As a result of those hearings, the court found the settlement of $160,000 to be fair and equitable, ordering $67,287.52 be set aside for the estate's attorneys and $92,-712,48 be held pending further order of the court.

On August 15, the magistrate filed his report on the August 3, 1994 hearing, concluding that the Mahoning County Probate Court had jurisdiction to approve the settlement. The magistrate also determined that distribution of the settlement would be governed by R.C. 2125.02 and 2305.21. The magistrate determined that no Pennsylvania court ever assumed jurisdiction to decide upon the proposed settlement or its distribution, and that there was not a conflict-of-laws problem, since a provision of the settlement agreement required the executor to file a "Certificate of Discontinuance," effectively a voluntary dismissal, in Pennsylvania.

After a detailed analysis of the evidence, the magistrate concluded that appellant, though having lived with the decedent for the nine years prior to his death, did not qualify as a "spouse" for purposes of this distribution pursuant to the wrongful death action (R.C. 2125.02). The magistrate also determined, that the survival action (R.C. 2305.21) was of some, but minimal value, since the evidence indicated that the decedent only suffered minimally prior to his death. Therefore, the magistrate determined that the bulk of the settlement would be distributed pursuant to the next-of-kin wrongful death action, brought by appellees, and only a small portion pursuant to the survival action, brought by the estate, of which appellant was sole beneficiary.

The magistrate also determined, in light of DR 1-206, that attorneys Masters and Rosen were entitled to extraordinary fees due to the "frivolous and reprehensible" conduct of appellant and her counsel, as well as Starr's unexcused absence from two scheduled hearings, which the magistrate described as contemptible.

Appellant subsequently filed two motions: one requesting an extension of time to file an objection to the magistrate's report of August 15, 1995, and the other to stay the award of attorney fees and expenses for appellees' counsel as approved in the July 17, 1995 journal entry on the basis that no hearing was held on the matter. On August 25, 1995, the court denied appellant's motion to extend time pursuant to Civ.R. 53, stating that it provides "ten days in which to 'appeal,' not object to, the Magistrate's Order." Though the court refused to enlarge the time for that motion, it did enlarge it so as to grant appellant's motion to stay the award of attorney fees and expenses, based not on the lack of a discretionary hearing, but on evidence that the parties may not have received notice of the court's original July 17, 1995 order.

After hearing was held, the court filed a journal entry September 21, 1995, overruling appellant's motion to stay, concluding that by distributing $10,000 of the settlement proceeds to the estate pursuant to the survival action, even after netting out appellees' attorney fees and costs, the estate actually gained assets that it may not have otherwise had, contrary to appellant's assertion. The trial court determined that the magistrate's distribution of the settlement proceeds

was not an abuse of discretion since it would have been within the magistrate's discretion to award one hundred percent of the proceeds to appellees pursuant to the wrongful death action, and since the taxing of costs is a discretionary function of the court. This appeal, filed October 23, 1995, followed.

Appellant sets forth three assignments of error on appeal. Appellant's first assignment of error alleges:

"The court below erred in characterizing the settlement proceeds, since there was no proof in support of a wrongful death claim, but there was substantial proof in support of a survivorship claim."

Appellant argues that there is no presumption of damages for *siblings* in a wrongful death action and, since appellees presented no evidence of actual damages, that appellees should not be entitled to recover for failure to meet their burden of proof. *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 592 N.E.2d 828; *Wise v. Timmons* (1992), 64 Ohio St.3d 113, 592 N.E.2d 840.

Appellees assert that the initial praecipe filed in Pennsylvania was both a survival and wrongful death action, for the benefit of both decedent's estate and the next of kin. The record is unclear as to whether the initial praecipe filed in Pennsylvania was ever, in fact, dismissed. Since the record provides no evidence to the contrary, we will assume that such action was taken. Appellees argue that R.C. 2125.02(B) sets forth five areas where damages may be awarded to next of kin in a wrongful death action: (1) loss of support, (2) loss of services, (3) loss of society, (4) loss of prospective inheritance, and (5) mental anguish. Appellees contend that sufficient testimony was presented by Kim Owen and others to support the fact that the decedent provided certain tangible and intangible support to appellees to warrant recovery for actual losses.

The record is unclear as to the actual purpose of the hospital's $160,000 settlement. The record contains no evidence of the settlement payment, nor any evidence as to settlement negotiations from the hospital's perspective. Though testimony was presented that attorney Rosen was in negotiations with the hospital, it is unclear as to what and for whom he was actually negotiating.

█ Under Pennsylvania law, only surviving spouses, children and parents, or the personal representative of the decedent on behalf of these individuals, are eligible to bring a wrongful death action. 11 P.L.E. (1970, Supp.1997) Death; Dead Bodies, Section 31. An action brought by the decedent's personal representative under the Survival Act, or a wrongful death action when there are no surviving spouse, children or parents, is for the benefit of the estate, and may pass to the legatees pursuant to a will. 11 P.L.E. (1970, Supp.1997) Death; Dead Bodies, Section 32. Since the hospital was located in Pennsylvania, the negligent

act occurred in Pennsylvania, the negotiations for the estate were conducted by a Pennsylvania attorney and the initial praecipe was to be filed in Pennsylvania, it is inconceivable that the hospital would have settled a wrongful death matter for which it had no statutory liability. Not only is it clear that these funds were not issued exclusively for distribution to statutory beneficiaries, but it should be equally clear that the disbursement did not even contemplate a wrongful death action.

A survival action, pursuant to R.C. 2305.21, may be brought on behalf of decedent's estate by the representative of the estate. Damages may be awarded for proven, actual suffering experienced by the decedent before he died. A wrongful death action is brought by the representative of the estate for the exclusive benefit of the surviving spouse, the children and the parents of the decedent, all whom are rebuttably presumed to have suffered damages by reason of the wrongful death, and for the exclusive benefit of the other next of kin of the decedent. R.C. 2125.02(A)(1). Damages may be awarded to the next of kin only for proven, actual losses suffered by them as a result of the decedent's death. *Ramage*, 64 Ohio St.3d 97, 592 N.E.2d 828.

R.C. 2125.02(A)(1) provides that a wrongful death action "shall" be brought in the name of the deceased's personal representative, usually the executor or administrator of the estate. *In re Estate of Ross* (1989), 65 Ohio App.3d 395, 583 N.E.2d 1379. Where the representative is not a beneficiary, he is a nominal party. *Id.* Though the representative is not acting on behalf of the estate in a wrongful death action, neither is he the agent of the statutory beneficiaries of the wrongful death action. *Id.* Settlement funds recovered by the personal representative in a wrongful death action, where *designated by the remitter for exclusive distribution to the statutory beneficiaries,* are not an asset of the estate. *In re Estate of Craig* (1993), 89 Ohio App.3d 80, 623 N.E.2d 620.

In *In re Estate of Reeck* (1986), 21 Ohio St.3d 126, 21 OBR 429, 488 N.E.2d 195, the court addressed whether a settlement recovered pursuant to the uninsured motorist provision of an insurance policy was to be considered as proceeds of an insurance contract payable to the insured's estate or as damages distributable under the Wrongful Death Act. Though the court held that these proceeds were to be distributed as damages under the wrongful death action, it did so on the basis of giving effect to the legislative intent of uninsured motorist statutes, not on the statutory beneficiary's independent right to bring a wrongful death action. The court's decisions in *Craig* and *Reeck* clearly indicate that under Ohio law, the "normal" flow of settlement proceeds, unless specifically designated by the remitter or unless required to give effect to specific statutes, is to the estate. Absent evidence to the contrary, we conclude that there is a

presumption that the payment of settlement proceeds to the estate was intended to benefit the estate. In the present matter, the record is void of any evidence that the settlement funds were issued to the estate for settlement of a wrongful death claim. Likewise, we find nothing in R.C. 2125.02(A)(1) to indicate that the disbursement of settlement proceeds to appellees is required to give effect to the legislative intent of the wrongful death statute as related to next of kin.

Since the action initiated in Pennsylvania is moot, and since there is no evidence as to the hospital's intent in making this settlement payment, we are left with merely a $160,000 settlement payment negotiated by the attorneys of the estate. No wrongful death or survival actions were ever filed in Ohio. Since the record is void of any evidence of involvement by either appellees or appellant in the negotiations, and since negotiations were clearly conducted by attorneys representing the estate, it can only be inferred that the settlement payment was made to the estate, based on the hospital's potential liability under the laws of the state in which the praecipe was filed.

Absent any evidence as to the hospital's intent in making this settlement, and absent evidence that appellees participated in the negotiations, it can only be concluded that the trial court abused its discretion in distributing these proceeds to anyone but the estate. Since there is no evidence in the record indicating that appellees relinquished their right to bring a wrongful death action against the hospital in favor of the settlement, and since no complaint was ever actually filed in either Pennsylvania or Ohio, it can only be concluded that appellees were not precluded from pursuing their own wrongful death action as next of kin.

For the reasons set forth above, we find appellant's first assignment of error to have merit.

Appellant's second assignment of error alleges:

"The court below erred in awarding attorney fees against the estate without holding a proper hearing."

■ Appellant argues that the court improperly awarded attorney fees to attorney Kalasky, counsel for appellees, contrary to R.C. 2101.32 and without hearing. Appellant contends that not only were appellees not proper parties to the probate case, but that even if they were, attorney fees cannot be awarded against the estate unless the attorney acted to benefit the estate. *In re Estate of Fugate* (1993), 86 Ohio App.3d 293, 620 N.E.2d 966; *In re Estate of Brown* (1992), 83 Ohio App.3d 540, 615 N.E.2d 319.

Though R.C. 2101.32 permits a probate judge to award, tax and apportion costs among the parties, C.P.Sup.R. 40 only permits a judge to award attorney fees "for the administration of estates."

Absolutely no evidence was presented that appellees had anything to do with obtaining the $160,000 settlement from the hospital. This settlement was negotiated and secured through the efforts of the estate. Appellees' argument that the estate benefited from the magistrate's order is rebutted by the fact that the estate would have gained $160,000 in assets but for their independent action. We find no evidence in the record to indicate that the hospital increased or decreased its settlement offer in consideration of any factor other than the actions of the estate's counsel. Appellees sought to secure benefit at the expense of the estate. Regardless of whether hearing was had or not, appellees' counsel is not entitled to fees derived from the estate because he performed no functions to benefit the estate.

Appellant's second assignment of error is found to have merit.

Appellant's third assignment of error alleges:

"The court below erred in refusing to grant a motion for extension of time to file objections to a magistrate's order, when the reason in support of the need for additional time was that the transcripts had to be obtained."

In light of our determinations relative to appellant's first and second assignments of error, appellant's third assignment of error is moot. Appellant properly asserts that a magistrate abuses his discretion when he rules on objections without first reviewing transcripts. *Savioli v. Savioli* (1994), 99 Ohio App.3d 69, 649 N.E.2d 1295. Civ.R. 53(E), however, is a discretionary rule that requires the moving party to state its objections with specificity and particularity.

Though case law appears to support appellant's contention that the motion for extension is virtually automatic, *Gramsz v. Gramsz* (June 27, 1985), Cuyahoga App. Nos. 49276 and 49280, unreported, 1985 WL 6886; *Lanning v. Lanning* (May 25, 1995), Franklin App. No. 94APF12–1710, unreported, 1995 WL 318781, it is also clear this is a matter of discretion for the magistrate. Based on a review of the record, especially appellant's failure to provide the basis in law for her objection and the conduct of appellant's counsel, we cannot conclude that the magistrate abused his discretion in denying appellant's motion.

Appellant's third assignment of error is found to be without merit.

For the reasons set forth above, the judgment of the trial court is reversed and the cause is remanded for further proceedings according to law, consistent with this opinion.

*Judgment accordingly.*

VUKOVICH and WAITE, JJ., concur.