**In re ESTATE OF MASON.**

[Cite as *In re Estate of Mason*, 184 Ohio App.3d 544, 2009-Ohio-5494.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 92693.

Decided Oct. 15, 2009.

John F. Gannon, David B. Malik, and Dennis J. Niermann, for Harriet Bryson, appellant and cross-appellee.

John K. O'Toole; and Steuer, Escovar, Berk & Brown Co. and Thomas J. Escovar, for Aaron Ricardo Mason and Sierra Mason, appellees and cross-appellants.

CHRISTINE T. McMONAGLE, Judge.

{¶ 1} This appeal and cross-appeal concern the apportionment and distribution of a $1,000,000 wrongful-death settlement and attorney fees made by the probate court. Appellant, Harriet Bryson, appeals from the probate court's judgment granting in part and denying in part objections to the distribution and award of attorney fees filed by Aaron Mason ("Mason") and Sierra Mason ("Sierra"). Mason and Sierra cross-appeal. For the reasons that follow, we affirm in part and reverse and remand in part.

## I.  Background

{¶ 2} On August 27, 2002, Bryson's 16-year-old son, Ricardo Mason, was shot in the back and killed by two Cleveland police officers as he sat in the front passenger seat of a car driven by another youth.

{¶ 3} In March 2003, Bryson filed an application with the probate court to be appointed administrator of the estate of Ricardo Mason. In the application, she listed Aaron Mason as the father of the decedent and indicated that his address was unknown. She gave notice of her application by publication, and after the requisite time, the probate court ruled that publication was complete, and there had been "no appearance by father."

{¶ 4} Thereafter, in August 2003, Bryson filed suit against two police officers and the city of Cleveland in federal court. The complaint alleged claims based upon violation of decedent's rights under Section 1983, Title 42, U.S.Code and wrongful-death, assault-and-battery, intentional-infliction-of-emotional-distress, and spoliation-of-evidence claims under state law. Bryson brought the action "for the exclusive benefit of the next of kin of decedent," although she did not specifically name Mason or Sierra as next of kin in the complaint.

{¶ 5} Prosecution of the federal case took nearly five years; the case was finally settled during jury selection on the first day of trial on February 8, 2008. In light of their prodigious efforts on Bryson's behalf and their contingency-fee agreement with her, Bryson's attorneys filed an application for approval of contingency fees of 40 percent with the probate court after the case was settled.

{¶ 6} Likewise, Bryson filed an application with the probate court pursuant to R.C. 2125.03 to approve the settlement and distribution of the wrongful-death claim monies. She proposed that the net settlement proceeds of $421,580.74 remaining after payment of attorney fees and expenses be distributed as follows: $299,080.74 to Bryson (decedent's mother); $70,000 to Tierra Mason (decedent's sister); $50,000 to Aaron R. Mason (decedent's brother); and $2,500 to Kathleen Bolton (decedent's maternal grandmother).

{¶ 7} Mason, who had had no contact of any kind with the decedent after 1993 and had made no appearance until after the wrongful-death action was settled, and Sierra, decedent's half-sister who had had no relationship whatsoever with decedent, objected to the proposed distribution and payment of attorney fees. They also filed motions to disqualify Bryson's counsel and to remove Bryson as administrator, which the magistrate denied.

{¶ 8} The magistrate held a hearing on the application for fees and on Bryson's application for approval of the settlement and distribution of settlement proceeds on June 26 and July 3, 2008.

## A. Evidence Adduced at the Hearing

{¶ 9} Bryson testified that she and Mason had started living together in 1986. They eventually had three children—Ricardo, Tierra, and Aaron—and she was solely responsible for providing for and caring for them. Mason contributed little

financially, as he worked only sporadically until 1988, when he stopped working altogether. The couple separated "by agreement" in 1991 because of Mason's drug use, when the decedent was five years old. Bryson testified that her relationship with Mason had ended after the separation and that Mason had contributed nothing financially for the children after the separation.

{¶ 10} Mason began living with Shirelle Palmer in 1991; their daughter, Sierra, was born on December 13, 1992. Palmer lived with Mason until 1993. The decedent visited Mason on a few occasions during this time, but never saw him after 1993.

{¶ 11} Palmer testified that she noted deterioration in Mason's appearance and behavior during their cohabitation. She testified that he often talked to himself and babbled and that he told her he heard voices. At times, he would leave home for several days. After their separation, Palmer sometimes saw Mason on the streets, dressed in floppy hats and army fatigue pants, with a skirt around the pants.

{¶ 12} Palmer testified that she saw Bryson once when Sierra was about four or five years old. They talked about getting Bryson's children and Sierra together for a visit and exchanged telephone numbers, but Palmer admitted that she never followed up to arrange a visit. Palmer saw Bryson again in 2005, after decedent's death, and they again talked about the children getting together, but it never happened. Palmer testified that neither she nor Sierra went to decedent's funeral, although they knew of decedent's death.

{¶ 13} Sierra Mason testified that she was nine years old when decedent died and was "sad" upon learning of his death. Sierra testified that she had asked Palmer about visiting her half-siblings, but admitted that she never did. Sierra admitted that she had never had any relationship with decedent.

{¶ 14} Bryson learned about her son's death after receiving a telephone call from the hospital informing her that he had been in an accident. She called her mother from the hospital, and Bolton joined her there, along with other family members. Bryson testified that she did not inform Mason of decedent's death because she did not know where he lived or the whereabouts of any member of the Mason family. No one from the Mason family attended the funeral. Bryson testified extensively regarding her grief in losing a child. Likewise, Bolton testified about the events surrounding decedent's death and her grief in losing her grandson.

{¶ 15} Tierra Mason testified that she had a "close" relationship with the decedent and that she was "hurt, sad" and in disbelief when she learned of his death. She testified that his death had a lasting impact on her, and now, she

"keeps things inside" and "is more to herself." Tierra testified that she last saw Mason when she was four or five years old.

{¶ 16} Mason testified that he had been homeless, living on the streets and in shelters, for many years. He admitted that he had had no contact with decedent after 1993 and offered no testimony regarding any loss he suffered as a result of decedent's death.

{¶ 17} Rodney Frank, a longtime friend of Mason's, testified that he and Mason used to drink alcohol and use marijuana together on numerous occasions. He testified that Mason's behavior and appearance deteriorated in the early 1990s. He testified that after 1993, he would see Mason on the streets, inappropriately dressed, unkempt, and unable to engage in meaningful conversation, but denying the need for medical attention. Frank testified that Mason never talked to him about his children during these years.

{¶ 18} Michael Taylor, another longtime friend of Mason's, likewise testified that Mason's behavior and appearance deteriorated in the early 1990s. Taylor saw Mason on the streets and would talk to him. When he told Mason of decedent's death, Mason stated, "It's not true; my son is not dead." Mason and Taylor talked about going to the funeral, but did not do so due to Mason's lack of appropriate clothing. Taylor testified that during Mason's years on the streets, Mason never talked to Taylor about his family, including decedent, and never asked Taylor to contact Bryson on his behalf.

{¶ 19} Daniel Wutch, a social worker at Safe Haven, testified that Mason had been living there since 2007. After a mental-health assessment in June 2007, Mason was diagnosed with schizophrenia, paranoid type, and was prescribed medication. Wutch testified that Mason is noncompliant with his medication regimen and continues to deny having a mental illness. Mason's medical records were admitted into evidence.

{¶ 20} Forensic and clinical psychologist Dr. John Fabian evaluated Mason's ability to understand the nature and objectives of the court proceedings and his ability to assist his attorneys in the process. His written report was admitted into evidence. Dr. Fabian testified that he agreed that Mason has schizophrenia, but found him capable of understanding the legal proceedings and able to assist his attorneys.

## B. The Magistrate's Decision; The Trial Court's Subsequent Ruling

{¶ 21} In her written decision, which was filed on August 5, 2008, the magistrate first noted that as there was no objection to the settlement amount, the court had bifurcated the proceedings and approved the settlement of $1,000,000 and payment of expenses in the amount of $178,419.26.

{¶ 22} With respect to the application for attorney fees of 40 percent, or $400,000, the magistrate found that Loc.R. 71.2 of the Cuyahoga County Common Pleas Court, Probate Division, allows fees in excess of the schedule of allowable fees if the court is satisfied that counsel rendered "extraordinary services." The magistrate found that Bryson's counsel had rendered such extraordinary services in the wrongful-death action and that their services warranted approval of a higher fee. She found that fees in the amount of $303,333.33 had previously been distributed and ordered that the remaining sum of $96,666.67 be paid from the settlement proceeds as the balance of attorney fees due.

{¶ 23} The magistrate then addressed distribution of the $421,580.74 net proceeds remaining after payment of attorney fees and case expenses. Throughout her decision, the magistrate always referred to Mason, decedent's father, as "Aaron Mason" or "Mr. Mason" and to decedent's brother as "Aaron R. Mason" and once as "Aaron Ricardo Mason."[1] She listed the potential statutory beneficiaries and their relationship to the decedent as follows:

Harriet Bryson, Mother

Tierra Mason, Sister

Aaron R. Mason, Brother

Kathleen Bolton, Maternal Grandmother

Aaron Mason, Father

Sierra Mason, Half–Sister

{¶ 24} After analyzing the evidence and applicable law, the magistrate ordered that the net settlement proceeds be distributed as follows:

| | |
|---|---|
| Harriet Bryson (77.5%) | $326,740.74 |
| Tierra Mason (12%) | $ 50,590.00 |
| Kathleen Bolton (.5%) | $ 2,100.00 |
| Aaron Ricardo Mason (10%) | $ 42,150.00 |
| Sierra Mason (0%) | $ 0.00 |
| Aaron Mason (0%) | $ 0.00 |

{¶ 25} On August 14, 2008, Mason and Sierra filed a motion for an extension of time until September 3, 2008, to file the record. The trial court apparently granted the motion the same day. On August 25, 2008, Bryson filed a motion for immediate entry of judgment on the magistrate's decision. She argued that because Mason and Sierra had not filed timely objections under Civ.R. 53(D)(3)(b)(i) to the magistrate's decision, the court should proceed to judgment. The court subsequently denied Bryson's motion and found that its order granting

---

1. This was obviously error as Mason's full name is Aaron *Ricardo* Mason and decedent's brother's name is Aaron *Ramone* Mason. Nevertheless, the magistrate's written decision was consistent in the way it (albeit erroneously) referred to decedent's father and decedent's brother.

Mason and Sierra's motion for an extension of time to file the record was intended to grant them until September 3, 2008, to file their objections to the magistrate's decision.

{¶ 26} Mason and Sierra filed their objections and a transcript of the hearing on August 29, 2008. In their objections, they argued that the magistrate had erred in awarding Mason only $42,150 and in awarding Sierra nothing. They argued that they should be awarded more and that the distributions to Bryson, Tierra Mason, and Bolton should be reduced. They also argued that the magistrate had erred in (1) denying their motions to disqualify Bryson's counsel and to remove Bryson as administrator of the estate, (2) limiting the scope of Bryson's and Tierra Mason's depositions, and (3) approving extraordinary attorney fees of 40 percent. The trial court set a hearing on the objections. Prior to the hearing, Bryson filed a prehearing brief in which she noted that contrary to the claim made by Aaron Mason and Sierra in their objections to the magistrate's decision, the magistrate had awarded decedent's brother $42,150 and had awarded Mason nothing. Bryson asked the court to confirm the magistrate's decision, but to include the relationship of each beneficiary to the decedent in the decision to clarify that $42,150 was to be distributed to decedent's brother.

{¶ 27} The trial court subsequently granted Aaron Mason and Sierra's objections in part and denied them in part. The court found that although Bryson's counsel were "skilled advocates" in the case, they had not performed "extraordinary services" sufficient to permit a fee award in excess of the schedule of allowable fees set forth in Loc.R. 71.2. Accordingly, the trial court ordered that counsel's fees be reduced to $303,333.33, which had already been paid.

{¶ 28} The trial court found that Bryson had incorrectly interpreted the magistrate's decision as awarding $42,150 to decedent's brother, and the decision actually awarded the monies to Mason. The court further found that the magistrate had erred in awarding Mason $42,150 and Sierra nothing and ordered that the distribution to Mason be increased to $51,824.76 and that $1,295.13 be distributed to Sierra. The court found that the magistrate had properly distributed nothing to decedent's brother, but ordered that the distributions to Bryson, Tierra Mason, and Kathleen Bolton be increased to $400,346.38, $61,189.73, and $2,591.74 respectively. (The increased distributions totaled $96,666.67, the difference between the amount of attorney fees requested ($400,000) and the amount awarded by the court ($303,333.33)).

{¶ 29} The court denied Mason and Sierra's request to reduce the distributions to Bryson, Tierra Mason, and Bolton. It also overruled their objections to the magistrate's denial of their motions to disqualify counsel and remove Bryson as administrator because it found "no evidence justifying the removal of Harriet Bryson as Administratrix of the Estate or evidence of conflict of interest or

impropriety that would disqualify counsel in the wrongful death litigation from acting as counsel for the Estate."

{¶ 30} Bryson appeals from the trial court's judgment; Mason and Sierra cross-appeal.

## II. Bryson's Assignments of Error

### A. Motion for Immediate Judgment

{¶ 31} In her first assignment of error, Bryson argues that the trial court erred in denying her motion for immediate judgment on the magistrate's decision and granting a hearing on objections that were not timely filed under Civ.R. 53(D)(3)(b)(i).

{¶ 32} Under Civ.R. 53(D)(3)(b)(i), a party may file written objections to a magistrate's decision within 14 days of the filing of the decision. Under Civ.R. 53(D)(3)(b)(iii), a party shall file the transcript with the court within 30 days after filing objections.

{¶ 33} Bryson argues that Mason and Sierra's motion for an extension of time to file the *record* said nothing about an extension of time to file their written *objections*, and therefore, they should have filed their objections by August 19, 2008, 14 days after the magistrate's decision was filed. Bryson contends that because they did not do so, the trial court should have granted her motion to proceed to immediate judgment on the magistrate's decision.

{¶ 34} Under Civ.R. 53(D)(5), a court shall allow a reasonable extension of time to file objections for good cause shown. Likewise, under Civ.R. 6(B), a court may in its discretion enlarge the period in which objections must be filed. *Provident Bank v. Hartman* (May 24, 2001), Cuyahoga App. No. 78292, 2001 WL 605404; *Kaur v. Bharmota,* Franklin App. No. 05AP–1333, 2006-Ohio-5782, 2006 WL 3113376. An abuse of discretion means that the court acted arbitrarily, unreasonably, or unlawfully in granting the extension. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 35} In its entry denying Bryson's motion for immediate judgment, the trial court indicated that it had treated Mason and Sierra's motion for an extension of time to file the record as a request for an extension of time to file their objections to the magistrate's decision. We cannot say that this was an abuse of the trial court's discretion under Civ.R. 6(B). Although appellees' motion made no mention about filing objections, the trial court apparently concluded that without a record, appellees could not make their objections. Accordingly, Bryson's first assignment of error is overruled.

## B. Specificity of Objections

█ {¶ 36} Under Civ.R. 53(D)(3)(b), "an objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." In her second assignment of error, Bryson contends that Mason and Sierra's objections to the magistrate's report lacked specificity and therefore should not have been considered by the trial court. She argues that although appellees filed a transcript of the hearing with their objections, they did not cite any specific page of the transcript to support their objections. Likewise, Bryson argues that although appellees included Mason's medical records with their objections, they did not cite any evidence in the records that would support a conclusion different from that reached by the magistrate.

{¶ 37} We agree that appellees' written objections were less than stellar. They contained conclusory statements that "the record and evidence" did not support the magistrate's decision, and despite appellees' assertion otherwise, made no references whatsoever to any page in the transcript or the medical records that would support their objections. Nevertheless, we find that the objections met the minimum standards for objections set forth in Civ.R. 53(D)(3). Appellees stated with adequate particularity the six grounds for their objections, made some argument regarding each, and filed the transcript with their objections, which was sufficient to allow the trial court to fulfill its duty under Civ.R. 53(D)(4)(d) to rule on the objections after an independent review. See *In re Tutt* (Aug. 31, 2000), Cuyahoga App. No. 77028, 2000 WL 1231477. Accordingly, Bryson's second assignment of error is overruled.

## C. Attorney Fees

█ {¶ 38} Local Rule 71.2 of the Cuyahoga County Common Pleas Court, Probate Division, sets fees in cases where representation is on a contingency basis at 33 percent of the first $100,000 and 30 percent of the amount over $100,000, but allows for additional compensation "if the applicant demonstrates and the court is satisfied that extraordinary services have been rendered."

{¶ 39} In her written decision, the magistrate reviewed the prodigious efforts of Bryson's counsel over the nearly five years of litigation and concluded that they had rendered extraordinary services in achieving the $1,000,000 settlement. Appellees, who had no part in obtaining the settlement, objected to this award as excessive. The trial court agreed with appellees and found that counsel had not demonstrated "extraordinary services" sufficient to justify the increased award. The court modified the magistrate's decision and ordered attorney fees according to the schedule allowed by Loc.R. 71.2. In her third assignment of error, Bryson argues that the trial court erred in reducing the attorney-fees award.

{¶ 40} The decision to adopt, reject, or modify a magistrate's report will not be reversed on appeal unless the decision was an abuse of discretion. *Tiffe v. Groenenstein,* Cuyahoga App. No. 80668, 2003-Ohio-1335, 2003 WL 1353987, ¶ 3, citing *Wade v. Wade* (1996), 113 Ohio App.3d 414, 419, 680 N.E.2d 1305. "Abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. We find the trial court's decision regarding attorney fees to be unreasonable.

{¶ 41} Until the case was settled on the first day of trial after nearly five years of litigation, the police officers and the city contended that the deadly shooting was reasonable and justified. Bryson's counsel vigorously prosecuted the case, which, as the magistrate found in her decision, necessitated "63 depositions; [a] reconstruction expert retained to prove defendants had altered, spoliated, and destroyed evidence at the scene; purchase of the vehicle [from the salvage yard] in which decedent was shot to preserve it for use at trial; [a] summary judgment motion regarding the spoliation claim; the retention of multiple experts, including experts in ballistics, police procedure, accident reconstruction, forensic photography, audio, tire imprint, physician, accountant; defense of several additional summary judgment motions [Bryson's brief in opposition to defendants' three summary judgment motions was 92 pages long with 106 exhibits]; numerous discovery disputes requiring court intervention ( [the] federal court docket contains 443 entries); defense of defendants' appeal of summary judgment ruling to Sixth Circuit Court of Appeals; full-scale trial preparation, including subpoena of 27 witnesses; preparation to cross-examine all defense witnesses; [and] time records kept pursuant to statute allowing attorney fees to the prevailing party [indicating] counsel fees in excess of $900,000.00."

{¶ 42} On this record, we find counsel's efforts sufficiently extraordinary to warrant contingency fees of 40 percent under Loc.R. 71.2. Accordingly, the trial court abused its discretion in modifying the magistrate's decision regarding attorney fees.

{¶ 43} Bryson's third assignment of error is sustained. The case is reversed and remanded with instructions to the trial court to award attorney fees of 40 percent to Bryson's counsel.

### D. Distribution to Mason

{¶ 44} Under R.C. 2125.02(A)(1), "a civil action for wrongful death shall be brought for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of the wrongful death, and for the exclusive benefit of the other next of kin of the decedent." R.C. 2125.03 provides that the amount

received from the settlement shall be distributed to the beneficiaries and that the court shall adjust each share "in a manner that is equitable, having due regard for the injury and loss to each beneficiary resulting from the death and for the age and condition of the beneficiaries."

{¶ 45} In her fifth assignment of error, Bryson argues that the trial court should have modified the magistrate's decision to reflect that the magistrate intended that $42,150 be distributed to decedent's brother, and not to Mason, decedent's father. Conversely, in her fourth assignment of error, Bryson argues that if the magistrate did, in fact, order that $42,150 be distributed to Mason, the award was not supported by the evidence, as Mason presented no evidence of his loss. In her sixth assignment of error, Bryson contends that the trial court erred in awarding Mason any monies at all, as Mason had abandoned decedent nine years before his death. We address these assignments of error together, as they are related.

{¶ 46} We agree with Bryson that the magistrate's decision ordered that $42,150 be distributed to decedent's brother and that no monies be distributed to Aaron Mason. As noted earlier, the decision consistently referred to decedent's father as "Aaron Mason" or "Mr. Mason" and to decedent's brother as "Aaron R. Mason" and once as "Aaron Ricardo Mason." Thus, the magistrate's order that $42,150 of the settlement proceeds be distributed to "Aaron Ricardo Mason" and "$0.00" be distributed to "Aaron Mason" meant that decedent's father was to receive none of the settlement monies. The trial court erred in finding that the magistrate's decision awarded $42,150 to the father and nothing to decedent's brother.[2]

{¶ 47} Nevertheless, we find the trial court's finding to be harmless error. The magistrate's decision contained an inherent inconsistency that may have led to the trial court's erroneous conclusion. Under R.C. 2125.02, Bryson and Aaron Mason, as decedent's parents, are rebuttably presumed to have suffered damages by reason of decedent's wrongful death. Other next of kin do not enjoy this presumption and must prove actual damages in order to share in the settlement proceeds. *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 105, 592 N.E.2d 828; *Hooks v. Owen* (1998), 130 Ohio App.3d 38, 43, 719 N.E.2d 581.

---

2. Thus, appellees' repeated assertion that Bryson has waived any error because she did not file objections to the magistrate's decision is specious. Bryson had no reason to file objections to the decision; although the magistrate changed the various distribution amounts suggested by Bryson, the magistrate ordered that the settlement monies be distributed to the four people Bryson had proposed should receive monies from the settlement and did not award monies to Mason or Sierra, whom Bryson had argued had no right to distribution.

{¶ 48} The magistrate's decision found that although Aaron Mason was rebuttably presumed to have suffered loss, sufficient rebuttal evidence had been presented to demonstrate that his loss was minimal, especially as compared to Bryson's. The decision also found that decedent's brother, Aaron R. Mason, who was required to prove his actual loss, was incarcerated and "presented no evidence that he suffered any losses." Despite these conclusions, the decision inexplicably awarded decedent's brother $42,150 and Aaron Mason nothing.[3]

{¶ 49} But as decedent's brother presented no evidence of his loss, no monies could be distributed to him. Further, as Mason was rebuttably presumed to have suffered loss and the evidence failed to establish that his loss was nonexistent, he was entitled to some monies. Bryson's argument that Mason was not entitled to any monies at all because he presented no evidence of his loss is misplaced. As a parent, Mason was rebuttably presumed to have suffered loss. Thus, it was Bryson's burden to present evidence to rebut the presumption of Mason's loss.

{¶ 50} We review the trial court's decision under an abuse-of-discretion standard. *Tiffe*, 2003-Ohio-1335, 2003 WL 1353987, ¶ 3. Although the trial court abused its discretion in increasing the amounts awarded to the beneficiaries by the amount it decreased the attorney fees, we find no abuse of discretion in an award to Mason of $42,150, the amount apparently originally intended by the magistrate. The evidence demonstrated that Mason had had at least some contact with his son until he was eight years old. Moreover, under R.C. 2125.02(A)(1), he is presumed to have suffered a loss from the wrongful death of his child. Accordingly, although Mason had not had recent contact with the decedent before his death (perhaps due to his mental illness), we cannot find that awarding him an amount totaling only four percent of the gross settlement proceeds was unreasonable, arbitrary, or unconscionable (especially as compared to Bryson's 32 percent distribution).

{¶ 51} Bryson argues that Mason's claim should have been dismissed altogether, however, because under R.C. 2125.02(A)(1), a parent who has abandoned a minor child decedent shall not receive a benefit in a wrongful-death action. Under R.C. 2125.02(G)(3), a parent of a minor child has "abandoned" the child when the parent failed without justifiable cause to communicate with, care for, or provide support for the minor for at least one year immediately prior to the death of the minor. Bryson contends that Mason had had no contact with the decedent for nine years prior to his death and, therefore, had abandoned him under R.C. 2125.02(A)(1).

---

3. In light of the magistrate's findings, it seems likely that the magistrate intended to award Aaron Mason $42,150 and decedent's brother nothing; however, on its face, the decision indicates otherwise.

{¶ 52} R.C. 2125.02(E) provides the method for establishing parental "abandonment" in a wrongful-death action. Under R.C. 2125.02(E)(1), the personal representative of the decedent's estate in a wrongful-death action may file a motion in the court in which the action is commenced, requesting that the court issue an order declaring that the parent abandoned the minor decedent and is not entitled to recover damages in the action. Such a motion may be filed at any time during the pendency of the action. Upon the filing of the motion, the court shall conduct a hearing at which the movant has the burden of proving abandonment. R.C. 2125.02(E)(2).

{¶ 53} The record reflects that Bryson never filed such a motion in federal court during the pendency of the wrongful-death action. Accordingly, the trial court did not err in denying Bryson's motion to dismiss Mason's claims on the basis of abandonment under R.C. 2125.02. Nevertheless, the trial court properly held that although Mason could participate in the hearing regarding distribution of the settlement proceeds, evidence that he had no contact with the decedent after 1993 was admissible to minimize the value of the loss to Mason.

{¶ 54} Appellant's fourth, fifth, and sixth assignments of error are overruled.

### E. Award to Sierra

{¶ 55} In her seventh assignment of error, Bryson argues that the trial court abused its discretion in awarding Sierra any monies because the only evidence in the record was that she never had any relationship with the decedent. We agree.

{¶ 56} As a sibling, Sierra is entitled to monies only upon proof of actual damages suffered as a result of decedent's death. *Ramage*, 64 Ohio St.3d at 105, 592 N.E.2d 828. Although Sierra testified that she was "sad" upon learning of decedent's death, even a complete stranger to decedent could feel sad upon learning the circumstances of decedent's death. Although it was through no fault of her own, Sierra had no relationship whatsoever with decedent. Merely feeling "sad" about his death does not entitle her to distribution. Accordingly, the trial court abused its discretion in awarding Sierra $1,295.13.

{¶ 57} Bryson's seventh assignment of error is sustained.

### F. Dr. Fabian's Testimony

{¶ 58} During her testimony, Shirelle Palmer was asked whether Mason ever indicated to her, during the time she lived with him, that people were after him. She responded, "Yeah. He used to babble and talk to hisself." Upon objection by Bryson's counsel that the answer was unresponsive, the magistrate

specifically instructed Palmer to answer the question, "Did he [Mason] ever hear voices?" Palmer responded, "Yes, he told me he did."

{¶ 59} Subsequently, upon direct examination by Mason and Sierra's counsel, Dr. Fabian testified regarding his written report. He testified that he had interviewed Mason for a competency assessment and that his opinion, to a reasonable degree of "psychological probability," was that Mason presently suffers from schizophrenia, undifferentiated type. Counsel then asked Dr. Fabian what his opinion of Mason's condition in the early 1990s was, assuming "a lack of proper dress, inappropriately dressed, that he couldn't carry on lucid conversations, that he babbled, that he was somewhat hallucinatory." The magistrate overruled the objection by Bryson's counsel and admitted Dr. Fabian's answer, which was that the symptoms were consistent with schizophrenia.

{¶ 60} In her eighth assignment of error, Bryson argues that the magistrate erred in admitting this testimony because it was not in Dr. Fabian's written report, violated Civ.R. 26 and Loc.R. 21.1, and did not satisfy the reasonable certainty standard. We disagree.

{¶ 61} Under Evid.R. 703, the facts or data in a case upon which an expert bases his opinion may be those "admitted into evidence at the hearing." In response to questioning by the magistrate, Palmer specifically testified that Aaron Mason told her in the early 1990s that he heard voices. Palmer also testified that Mason babbled and began to dress inappropriately when she lived with him. Frank and Taylor likewise testified regarding Mason's inappropriate dress and inability to engage in meaningful conversations. Accordingly, the facts upon which Dr. Fabian based his opinion that Mason's behavior in the early 1990s was consistent with schizophrenia were based upon evidence admitted at the hearing. Thus, Bryson's argument that she was "ambushed" by this testimony is without merit. Likewise, we find that Dr. Fabian's testimony was given to the requisite degree of medical certainty.

{¶ 62} Finally, we are unpersuaded by Bryson's argument that Dr. Fabian's testimony was unfairly prejudicial because without his testimony, the trial court would have concluded that Mason had abandoned decedent and consequently, would not have awarded him any monies. Palmer, Frank, and Taylor all testified that Aaron Mason's mental condition and ability to care for himself were deteriorating in the early 1990s. They testified further that they saw him on the streets, unable to acknowledge that he needed medical intervention. Thus, even without Dr. Fabian's opinion testimony that Mason's behavior in the early 1990s was consistent with schizophrenia, the evidence was clear that Mason was suffering from a serious mental illness, sufficient to mitigate his lack of contact with decedent after that time.

{¶ 63} Bryson's eighth assignment of error is overruled.

### III. Mason and Sierra's Assignments of Error

### A. Removal of Bryson as Administrator and Disqualification of Her Counsel

{¶ 64} In their first assignment of error, Mason and Sierra contend that the trial court erred in denying their objections seeking Bryson's removal as administrator and disqualification of her counsel.

{¶ 65} Bryson, as administrator, was the only person who could pursue and file a wrongful-death claim on behalf of decedent's next of kin. R.C. 2125.02; *Ramsey v. Neiman* (1994), 69 Ohio St.3d 508, 634 N.E.2d 211 (a cause of action in wrongful death arising under R.C. Chapter 2125 must be brought in the name of a person appointed by a court to be the administrator, executor, or personal representative of the decedent's estate). Aaron Mason and Sierra contend that Bryson breached her fiduciary duty to represent them in the wrongful-death action by not listing them in the complaint and then breached her fiduciary duty regarding their distribution of settlement proceeds because she took a position adverse to their interests by asserting that they were not entitled to any distribution. We find no breach of duty.

{¶ 66} The complaint specifically indicated that Bryson brought suit on behalf of all of decedent's next of kin, including Mason and Sierra, despite the fact that they were not specifically named in the complaint. Further, although neither Mason nor Sierra took any action to assert a claim or participate in the wrongful-death action, they both were permitted to present their claims relative to distribution of the settlement proceeds. Thus, their rights were adequately protected.

{¶ 67} Further, as administrator of the estate, Bryson was obligated to inform the court of law and facts that indicated that Aaron Mason and Sierra had not suffered any loss from decedent's death and therefore were not entitled to distribution of the settlement proceeds. Mason's lack of contact with the decedent in the nine years prior to his death and Sierra's lack of any relationship whatsoever with the decedent were clearly relevant to whether and what amount of distribution should have been made to them, at the expense of other next of kin. We find no breach of Bryson's fiduciary duty, nor any abuse of discretion in the trial court's denial of appellees' objection to Bryson as administrator.

{¶ 68} Likewise, the trial court did not abuse its discretion in denying appellees' objection to counsel's continuing representation of the estate. In their objection, appellees contended that counsel failed to adequately represent all of the statutory beneficiaries because they advised Bryson regarding Aaron Mason's lack of contact with the decedent and Sierra's lack of relationship with the decedent. They further argued that counsel's interest in obtaining their fees

created an "obvious conflict of interest" with the beneficiaries of the settlement proceeds, including Bryson.

{¶ 69} We find no abuse of discretion, as appellees presented no evidence of conflict of interest or impropriety that would justify removal of Bryson's counsel. Counsel filed its application for contingency fees of 40 percent, to which Bryson had agreed, as allowed by Loc.R. 71.2. We find no cause to disqualify counsel simply because they are interested in obtaining payment of their fees. Moreover, we find nothing that would indicate that counsel had a conflict of interest with beneficiaries of the wrongful-death action simply because they advised the administrator of law and facts indicating that certain beneficiaries, who appeared only after the wrongful-death action was settled and had no relationship with decedent, were not entitled to distribution.

{¶ 70} Appellees' first assignment of error is overruled.

## B. Distributions to Mason and Sierra

{¶ 71} In their second assignment of error, appellees contend that the trial court erred in not distributing the proceeds more "equitably" to Aaron Mason. In their third assignment of error, they argue that the court did not award Sierra an "equitable" amount. In short, appellees contend that they should have received larger distributions. We disagree.

{¶ 72} As discussed above, the trial court should not have awarded Sierra any monies. With respect to Aaron Mason, the evidence was clear that his loss was minimal. Although Mason's schizophrenia might mitigate the purposefulness of his lack of contact with the decedent, the evidence established that Mason had no relationship with decedent for nine years prior to his death. Furthermore, he offered no evidence about any loss he suffered as a result of decedent's death. On this evidence, the trial court did not abuse its discretion in not awarding Mason a larger distribution of the settlement proceeds.

{¶ 73} Appellees' second and third assignments of error are overruled.

{¶ 74} The judgment is affirmed in part and reversed and remanded in part with instructions to the trial court to enter judgment awarding attorney fees of 40 percent to Bryson's counsel and distribution of net settlement proceeds as follows: $326,740.74 to Bryson, $50,595 to Tierra Mason, $2,100 to Bolton, $42,150 to Aaron Ricardo Mason, decedent's father, $0 to Sierra Mason, and $0 to Aaron Ramone Mason, decedent's brother, the amounts ordered by the magistrate.

Judgment affirmed in part
and reversed in part,
and cause remanded.

COONEY, A.J., and BOYLE, J., concur.