[Cite as *In re Figley*, 2013-Ohio-427.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF THE ESTATE OF WILLIAM FIGLEY | ) ) ) ) ) ) ) ) ) | CASE NO. 12 CO 15<br><br>OPINION |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common Pleas, Probate Division of Columbiana County, Ohio Case No. 08ES127

JUDGMENT:                                      Affirmed

APPEARANCES:
For Appellees                                   Attorney James T. Hartford
                                                     Attorney Douglas A. King
                                                     91 Taggart Street, P.O. Box 85
                                                     East Palestine, Ohio 44413

                                                     Atty. Richard G. Zellers
                                                     3810 Starrs Centre Drive
                                                     Canfield, Ohio 44406

For Appellant                                   Attorney Timothy J. Cunning
                                                     940 Windham Court, Suite 4
                                                     Boardman, Ohio 44512

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: February 8, 2013

DONOFRIO, J.

{¶1}   Appellant, the Estate of Mary Lou Hannen, appeals from a Columbiana County Common Pleas Court Probate Division decision distributing the proceeds of a wrongful death settlement to appellees, Jean Maxwell, Christine May, and Jana Grim.

{¶2}   On May 25, 2007, William Figley was killed in a motorcycle accident. He died intestate.

{¶3}   The probate court appointed Francis Figley, William's father, as the Administrator of William's Estate (the Estate).  The Estate filed a wrongful death action against Melissa Midcap, Fredrick Figley II, and two others who were ultimately dismissed.  William left five potential beneficiaries: Francis; his mother, Mary Lou Hannen; and his three sisters, appellees.

{¶4}   On July 9, 2010, the Estate filed an application to approve the settlement and distribution of the wrongful death claim against Midcap.  The proposed settlement was $100,000 with net proceeds of $57,419.60 (First Settlement).  The probate court approved this settlement on August 12, 2010.  Prior to the First Settlement, appellees waived any interest they might have had in the proceeds of the First Settlement.  Thus, the proceeds of the First Settlement were split equally between Francis and Mary Lou.

{¶5}   On October 19, 2010, with the wrongful death action against Fredrick Figley II still pending, Mary Lou passed away.

{¶6}   On June 13, 2011, the Estate filed an application to approve the settlement and distribution of the wrongful death claim against Figley II.  The proposed settlement was $86,500 with net proceeds of $57,360.02 (Second Settlement).  At this time, appellees filed affidavits with the probate court stating that at the time of the First Settlement, they had waived all interest in the proceeds in deference to their parents but that since their mother had died, they were now reasserting their claims and requested that the court consider them in the distribution from the Second Settlement.  Also at this time, no estate had been opened for Mary Lou.  The probate court approved the Second Settlement on July 7, 2011.  The court divided the proceeds with half going to Francis and the other half being equally

divided among appellees.

**{¶7}** On August 9, 2011, Richard Hannen, Mary Lou's husband, filed an application with the probate court to probate Mary Lou's estate. The court appointed Richard as the executor of Mary Lou's estate.

**{¶8}** Also on August 9, 2011, Richard, as executor of Mary Lou's estate, filed a motion to vacate the entry approving the Second Settlement alleging that Mary Lou's estate was entitled to a portion of the Second Settlement proceeds.

**{¶9}** The court held an informal hearing on the motion and concluded that Mary Lou's estate was entitled to actual notice of the application and approval of the Second Settlement. Because Mary Lou's estate did not have actual notice, the court scheduled a re-hearing on the application for settlement and distribution of wrongful death proceeds for the Second Settlement. The court noted that at this point, it was not disturbing its order in any other respects.

**{¶10}** Consequently, the court held a hearing where it heard testimony from Richard, Francis, Appellee-Jana, and Appellee-Christine. It then concluded the proceeds of the Second Settlement should be divided equally among appellees and put on an order to this effect.

**{¶11}** Appellant filed a timely notice of appeal on April 11, 2012. Francis did not appeal the probate's court judgment.

**{¶12}** Appellant raises two assignments of error, the first of which states:

> THE TRIAL COURT ERRED IN FINDING THAT JEAN MAXWELL WAS A BENEFICIARY ENTITLED TO SHARE IN THE PROCEEDS OF HER BROTHER'S WRONGFUL DEATH ACTION BECAUSE JEAN MAXWELL FAILED TO PROVE ACTUAL DAMAGES AT THE HEARING.

**{¶13}** In this assignment of error appellant argues that the probate court erred in ordering that Appellee-Jean was entitled to share in the Second Settlement. It claims that Appellee-Jean failed to prove that she suffered any actual damages

resulting from her brother's death. Appellant points out that Appellee-Jean did not put forth any evidence at all. Therefore, it asserts, she could not have met her burden. Appellant goes on to assert that the rule requiring a sibling to prove actual damages is statutorily imposed. As such, it contends the probate court was not free to disregard it.

{¶14} There is no precise mathematical formula for apportioning the proceeds of a wrongful death action. *In re Estate of Steigerwald*, 5th Dist. No. 2003-AP-10-0079, 2004-Ohio-3834, ¶18. Creating an equitable distribution of wrongful death proceeds is a matter within the probate court's discretion. R.C. 2125.03; *In re Estate of Marinelli*, 99 Ohio App.3d 372, 378, 650 N.E.2d 935 (11th Dist.1994). Abuse of discretion connotes more than an error of law or of judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶15} Pursuant to R.C. 2125.02(A)(1):

> A civil action for wrongful death shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of the wrongful death, and for the exclusive benefit of the other next of kin of the decedent.

Thus, there is a statutory presumption that the spouse, children, and parents of a decedent have suffered damages. The next of kin, which include siblings, must prove their damages. *Ramage v. Central Ohio Emergency Serv., Inc.*, 64 Ohio St.3d 97, 105, 592 N.E.2d 828 (1992).

{¶16} In support of its position that Appellee-Jean failed to prove her damages, appellant relies on *In re Estate of Mason*, 184 Ohio App.3d 544, 2009-Ohio-5494, 921 N.E.2d 705 (8th Dist.). In *Mason*, the appellate court found that the magistrate should not have awarded any proceeds from the wrongful death case to

the decedent's brother because the brother was required to prove his actual loss and failed to do so. The court pointed out that the decedent's brother was incarcerated and presented no evidence that he suffered any loss due to his brother's death. *Id.* at ¶48.

{¶17} The present case is distinguishable from *Mason*. In this case, there was evidence presented that Appellee-Jean suffered a loss as a result of her brother's death. While Appellee-Jean herself did not testify, evidence was presented that she suffered a loss, as did her sisters.

{¶18} For instance, Richard testified that William had a loving relationship with all of his sisters. (Tr. 49). In fact, Richard's attorney stipulated that William had a loving relationship with his sisters. (Tr. 50). Moreover, Francis testified that William's death affected all three sisters "terribly," that it disrupted their whole lives, and that they suffered "indescribable" sadness and grief. (Tr. 100). And, Appellee-Jana testified that William's death was "crushing" to her and it affected her sisters the same way. (Tr. 109). She also specifically stated that Appellee-Jean grieved after William's death. (Tr. 118).

{¶19} There is no requirement, statutory or otherwise, that a next-of-kin or sibling must testify in order to prove they suffered a loss as a result of a death in the family so that they may participate in a wrongful death settlement. The only requirement is that they must prove their damages. In this case, Appellee-Jean's damages were proved through the testimony of her father and sister and the stipulation of appellant's counsel. There was no evidence to the contrary. Thus, the trial court did not abuse its discretion in finding Appellee-Jean was entitled to share in the wrongful death proceeds.

{¶20} Accordingly, appellant's first assignment of error is without merit.

{¶21} Appellant's second assignment of error states:

THE TRIAL COURT ERRED WHEN IT DID NOT AWARD FRANCIS E. FIGLEY SR. OR MARY LOU HANNEN A SHARE OF THE PROCEEDS OF THE SECOND WRONGFUL DEATH ACTION.

{¶22} Appellant contends here that the probate court improperly failed to include it and Francis in distributing the proceeds of the Second Settlement.[1]

{¶23} First, appellant argues that because parents are statutorily presumed to have suffered a loss as a result of their child's death, the only way a court may exclude them from sharing in the proceeds of a wrongful death settlement is if their statutory presumption of loss is overcome. In this case, appellant points out, no evidence was presented to attempt to overcome the presumption. To the contrary, all parties agreed that William had enjoyed a close and loving relationship with his parents.

{¶24} Second, appellant argues that the probate court impermissibly based its decision on the fact that appellees did not receive a portion of the First Settlement proceeds. It contends the probate court should not have considered this factor because appellees waived any interest they might have had in the First Settlement.

{¶25} In distributing wrongful death proceeds the court "shall adjust the share of each beneficiary in a manner that is equitable, having due regard for the injury and loss to each beneficiary resulting from the death and for the age and condition of the beneficiaries." R.C. 2125.03(A)(1).

{¶26} In this case, the trial court found it was undisputed that William maintained a very close, loving relationship with both of his parents and each of his three full-blood sisters. It went on to find that following William's death, the loss to his parents, as well as to his sisters, was described as "terrible," "crushing," and "undescribable [sic.] sadness and grief." The court found there was no evidence of any clear expression of any quantifiable distinction of the degree of loss suffered by either William's parents or his sisters.

{¶27} The court then pointed out the net distributable settlement proceeds available for distribution totaled $114,779.62 (First Settlement proceeds + Second Settlement proceeds). And it determined the actual compensable loss suffered by

---

1 We note that Francis did not file a notice of appeal from the trial court's judgment in this case. And he is not a party to this appeal. Therefore, he did not contest the probate court's distribution of the Second Settlement to appellees.

each sister was proven to be nearly equal to that suffered by William's parents. The court then found it was fair and equitable to distribute the proceeds of the Second Settlement equally among the three sisters. It noted that this distribution resulted in each of William's parents receiving approximately a 25% share each of the total settlement proceeds and William's sisters receiving approximately a 16.7% share each of the total proceeds. The court stated this distribution recognized, to some extent, the court's appreciation and recognition that William's parents suffered some greater loss.

**{¶28}** The trial court did not abuse its discretion in distributing the proceeds of the Second Settlement equally among appellees. In doing so, the court looked at the wrongful death proceeds as a whole, instead of viewing the proceeds as two separate settlements as appellant does.

**{¶29}** The court's approach is supported by statute. R.C. 2125.03(A)(1) provides that "[t]he *amount* received by a personal representative in an action for wrongful death under sections 2125.01 and 2125.02 of the Revised Code, whether *by settlement* or otherwise, shall be distributed to the beneficiaries or any one or more of them." Emphasis added. The statute makes no distinction for separate, multiple settlements. Instead, it states that the court shall distribute the "amount received." That is what the court did here. It considered the "amount received" by William's estate as proceeds from his wrongful death action. The court considered the loss suffered by William's parents and sisters and the fact William's parents may have suffered slightly more. It then reached an equitable, total distribution whereby appellees would each receive 16.7% of the "amount received" and Francis and Mary Lou would each receive 25% of the "amount received."

**{¶30}** Furthermore, it is worth noting that the issue raised in this assignment of error likely only arose because the wrongful death action was settled, as opposed to going to trial. Had the wrongful death action proceeded to trial, with an award to the Estate, the probate court would have distributed the total award. It would not have broken the award down into two parts based on two different insurance

companies paying into it. This lends further support to the probate court's distribution.

**{¶31}** Accordingly, appellant's second assignment of error is without merit.

**{¶32}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.

DeGenaro, P.J., concurs.